I. B. TIGRETT, Appellee, v. H. P. TIGRETT, JR. and W. B. Shibley, Executors and Trustees Under the Will of H. P. Tigrett, Sr. and H. P. Tigrett, Jr. Individually, Appellants,

MRS. MARTHA T. WELLS, MRS. MARY T. CEASE and the Grandchildren, Born and Unborn of H. P. Tigrett, Sr., Appellees.—453 S.W.2d 100.

Western Section. October 13, 1967.

Certiorari Denied by Supreme Court May 6, 1968.

Avery, P. J. (W.S.), dissented in part.

Palmer & Walker, Dyersburg, for I. B. Tigrett, appellee.

Robert P. Adams and Richard Holmes, Trenton, for appellants.

M. Watkins Ewell, Dyersburg, guardian ad litem for Christine Tigrett, John Uitendall, Jack E. Wells, Jr., Parks Wells, Burton Wells, Dan Tigrett Cease, and the unknown and unborn children and grandchildren of H. P. Tigrett, Jr., Martha T. Wells and Mary T. Cease.

Latta Richards, Dyersburg, guardian ad litem for the unknown and unborn children and grandchildren of I. B. Tigrett.

CARNEY, J. This suit involves the construction of the will of the late H. Parks Tigrett, Sr. of Newbern, Dyer County, Tennessee. The will was dated October 28, 1952. Mr. Tigrett, Sr. died November 14, 1958, at the age of 84. His primary testamentary beneficiaries were his widow, Mrs. Sara N. Tigrett, who is now 85 years of age and living in the residence on the family farm; a son, the complainant, Mr. Isaac B. Tigrett, who now lives in Memphis, Tennessee; another son, the defendant, H. Parks Tigrett, Jr., who lives at Newbern, Tennessee; a daughter, Mrs. Mary T. Cease, who now lives in Jackson, Tennessee; and a daughter, Mrs. Martha T. Wells, who lives in Newbern, Tennessee. Mrs. Wells has three children; Mrs. Cease has one child; H. P. Tigrett, Jr. has three children; and I. B. Tigrett has one child. They are remaindermen under the will of H. P. Tigrett, Sr., their grandfather.

Mr. Tigrett, Sr. named as executors and testamentary trustees his son H. Parks Tigrett, Jr. and his nephew William B. Shibley of Newbern, Tennessee. Mr. Shibley lived in the home of Mr. Tigrett, Sr. for many years. He is not a beneficiary under the will.

There are devises of real estate in favor of the four children of H. Parks Tigrett, Sr. in trust for the life of the several children with remainder in fee to their respective children and descendants. The grandchildren of the testator both born and unborn were made parties defendant. The minors and unborn grandchildren are represented by the guardian ad litem.

The principal controversy between the complainant, Isaac B. Tigrett, and his brother, the defendant, H. Parks Tigrett, Jr., is over the real estate devised to them under the will. The Chancellor ordered H. P. Tigrett, Jr. to convey in trust for the benefit of Isaac B. Tigrett for life with remainder to his descendants a tract of 133 acres of farm land as provided in the will or in the alternative a portion of the 250-acre H. P. Tigrett, Sr. homeplace equal in value to the 133-acre tract owned by H. Parks Tigrett, Jr. William B. Shibley and H. P. Tigrett, Jr. as executors-testamentary trustees and H. P. Tigrett, Jr. individually have appealed from the decree of the Chancellor and have assigned errors.

When this cause was first heard before this Court, it appeared from the testimony of some of the witnesses that there had been a construction of one or more provisions of the will in the Common Law and Equity Court of Dyer County, Tennessee, which proceedings were not included in the transcript. On October 21, 1966, an order was entered by this Court remanding the cause for completion of the transcript to include the proceedings in the Common Law and Equity Court of Dyer County and the taking of the deposition of the executor, William B. Shibley. The record has been returned to this Court for final determination. It now appears that no proceedings were ever filed in the Common Law and Equity Court

of Dyer County but that some of the parties only consulted their attorney. A bill was drafted for partial construction of the will but never filed.

The great proportion of Mr. Tigrett, Sr.'s estate was comprised of 400 acres of farm land on which he maintained his home located two miles east of Newbern, Tennessee, on the Newbern-Yorkville highway, State Highway No. 77. One hundred and fifty acres of the farm were devised for the benefit of the daughter, Mrs. Martha T. Wells, and are located on the south side of the highway. Two hundred and fifty acres on which is situated the Tigrett home are located on the north side of the highway across from the 150 acres devised to Mrs. Wells.

The 250 acres were devised in trust to the defendant, H. Parks Tigrett, Jr., for his life. However, two acres were designated by the testator for the benefit of Mrs. Martha T. Wells and her descendants as a home site leaving a net devise of 248 acres to H. P. Tigrett, Jr. Mr. Tigrett, Sr. operated the 400 acres as one farm.

Mr. Tigrett, Sr., at the time of the making of the will in 1952, had $22,000 cash value of U.S. Government bonds which he had earmarked for the purchase of real estate for the benefit of his daughter, Mrs. Mary T. Cease. At the time of his death the value of the bonds were only $14,000. Mr. Tigrett, Sr. had advanced Mrs. Cease approximately $5,000 of the bonds prior to his death and Mr. Tigrett, Sr. had cashed some of the bonds for other purposes. Other personal property owned by the testator at the time of his death was of small value and the amount is not important to this appeal.

The defendant, H. Parks Tigrett, Jr., owns a farm of 133 acres lying immediately east of and adjoining the 250-acre homeplace. Mr. Tigrett, Sr., in his will, required the defendant, H. Parks Tigrett, Jr., to convey the 133-acre tract of land to the trustees for the benefit of I. B. Tigrett for life with remainder to his children. H. P. Tigrett, Jr. was given the alternative of investing $17,500 in real estate taking title in the trustees in lieu of deeding his 133-acre tract. The title to the land so purchased was to be in the trustees for the life of I. B. Tigrett with remainder to I. B. Tigrett's children and their descendants with a gift over to other children of H. P. Tigrett, Sr. if I. B. Tigrett died without lineal descendants.

After the death of H. P. Tigrett, Sr., H. P. Tigrett, Jr. notified his brother, I. B. Tigrett, and W. B. Shibley, co-trustee, that he would not deed his 133-acre tract of land for the benefit of I. B. Tigrett but that " * * * I will at and within the time provided by and in accordance with the terms of said will of H. P. Tigrett, Sr. purchase and pay for land of the value of $17,500.00 instead of conveying to the said I. B. Tigrett the 133 acre tract of land * * *''

H. P. Tigrett, Jr., upon advice of counsel, contended that he was obligated to make purchase of the real estate only after the death of the widow, Mrs. Sara Tigrett. Complainant Isaac B. Tigrett, apparently without advice of counsel, acquiesced in this construction of the will.

H. P. Tigrett, Sr., in his lifetime, had purchased for Isaac B. Tigrett a home in Newbern, Tennessee, which Mr. Tigrett, Sr. valued at $5,000 and which was held by H. P. Tigrett, Jr. and William B. Shibley as trustees for Isaac B. Tigrett for life with remainder in his children and their descendants in substantially the same language

as used by the testator in the devises to his four children. The trustees had full power of sale and reinvestment. Isaac B. Tigrett requested the trustees to sell his home and use the proceeds as a down payment on a farm known as the Freeman farm in Obion County, Tennessee. After the death of the widow, Mrs. Sara Tigrett, H. P. Tigrett, Jr. would retire all liens on the farm up to $17,500. The executors, H. P. Tigrett, Jr. and William B. Shibley, looked at the Freeman place, decided it was not a good buy and rejected it. Other farms were looked at or discussed but for various reasons no purchase was made. H. P. Tigrett, Jr. wanted the complainant to put some of his personal funds into the purchase of a farm and Isaac B. Tigrett refused because he could take only a life estate.

Negotiations between Isaac B. Tigrett and the executors-trustees for the purchase of a tract of land for the benefit of Isaac B. Tigrett failed and the parties reached an impasse. On May 7, 1960, I. B. Tigrett filed his original bill in this cause in the Chancery Court of Dyer County asking for a construction of his father's will averring that H. P. Tigrett, Jr. was under an obligation under the terms of the will to make investment of the $17,500 for the benefit of I. B. Tigrett within a reasonable time after the death of the testator and that H. P. Tigrett, Jr. had wilfully refused to make such purchase until after the death of their mother, Mrs. Sara Tigrett. The bill also averred that the said I. B. Tigrett and his descendants had already suffered and would further suffer great financial loss because of the substantial increase in the value of the land since the date of the making of the will and since the date of death of the father, H. P. Tigrett, Sr.

Complainant asked that H. P. Tigrett, Jr. be required to convey to complainant's trustee his 133-acre tract of land as provided in the will or that the trustees take title to one-half of the homeplace of 250 acres for the benefit of Isaac B. Tigrett so as to make him "an equal beneficiary" under the will of his father, H. P. Tigrett, Sr. The executors-trustees and H. P. Tigrett, Jr., individually, filed answer insisting that H. P. Tigrett, Jr. did not have to invest the $17,500 in land for I. B. Tigrett and his children until after the death of Mrs. Sara Tigrett, widow of H. P. Tigrett, Sr.

A resume of the provisions of the will and the Chancellor's constructions thereof are as follows:

Item I conveyed all of the real and personal property of the testator, with the exception of $22,000 in government bonds, to the trustees for the benefit of the widow, Mrs. Sara Tigrett, for her lifetime. The trustees were instructed to provide Mrs. Sara Tigrett not only with the necessities and comforts of life but with such additional funds necessary to "support her reasonable wants to the end that she may live and be provided for after my death as she is now living and being provided for." The trustees were given not only the authority to sell and reinvest the property but also to encroach upon the corpus if necessary. The trustees have been paying the widow, Mrs. Sara Tigrett, the sum of $300 per month for her support which seems to be satisfactory to everyone. There is no controversy about this item of the will and we will not notice it further.

Item II provides as follows:

"Said trustees shall keep a true and correct account of all their transactions and activities as such trustees

which record shall be available to any and all interested beneficiaries hereunder and they shall make payments out of this trust fund as and in accordance with the reasonable wishes and desires of my said wife.

"Whatever balance shall be in said trust fund upon the death of my wife shall be divided equally among my four children to wit: H. P. Tigrett, Jr., I. B. Tigrett, Martha T. Wells and Mary T. Cease, and in the event any one of them shall not be living at the death of my said wife such share shall go to the child, children or descendants of same of such deceased child and if none then such share shall be divided equally among the aforesaid children living."

The trustees have never filed any report or accounting with the Probate Court of Dyer County and have never submitted any formal report or accounting to the other three children of H. P. Tigrett, Sr. They have filed no report in this cause.

Item III provides as follows:

"At this time, the date of the making of this will, certain of my children are indebted to me by note or otherwise and I am taking into consideration this fact in making the distribution of my property as herein provided among them and in order to carry out the intention and purposes as herein provided all indebtedness of my children to me on this the date of this will, except a note in the principal sum of $500.00 dated February 28, 1952 and signed by Mary T. Cease, shall be cancelled and any evidence in writing thereof surrendered but specifically providing that my son H. P. Tigrett, Jr. shall pay into the hands of my executors herein the sum of $2500.00 and his share of my estate

is charged therewith. Any indebtedness to be created after the writing of this will is excluded from its provisions."

H. Parks Tigrett, Jr. has paid into the estate the $2,500 provided by this item of the will.

Item IV of the will provides as follows:

"I have on hands at the present time bonds for the purpose of purchasing real estate for the use and benefit of my daughter, Mary T. Cease. However, I may not make this purchase before my death and in such event I hereby will and direct that said trustees reduce to cash $22,000.00 of said bonds and purchase therewith farm lands at such location and in accordance with the wishes of my said daughter, Mary T. Cease, and the title of said land shall be in the said trustees, H. P. Tigrett, Jr., and W. B. Shibley, for the use and benefit of my said daughter for and during her natural life only, at which time said trust shall end and said land become the absolute property of any child, children or descendants of children of my said daughter equally, the child or children of any deceased child taking the parent's share and in the event my said daughter, Mary T. Cease, shall die leaving no child, children or descendants of same then the title to said property shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes."

The trustees have never purchased the real estate for the benefit of Mrs. Cease as provided in Item IV. The four children and their mother have entered into the following written agreement relating to the devise for the benefit of Mrs. Cease, to wit:

"This agreement entered into by and among the beneficiaries under the last will and testament of H. P. Tigrett, deceased, duly probated and of record in the County Court Clerk's office of Dyer County, Tennessee, witnesseth:

"THAT WHEREAS, under the said will $22,000.00 in bonds was to be turned over to the trustees under said will to invest for the use and benefit of testator's daughter, Mary T. Cease, during her life, and

"WHEREAS, at the death of testator there was only approximately $14,000.00 in bonds on hand, and

"WHEREAS, IT IS DESIRED AMONG SAID BENEFICIARIES to make certain adjustments not in conflict with but in order to carry out the intention of testator's will the following agreement is entered into, to wit:

"The exact cash value of the bonds on hand at testator's death is not known but it is thought it is approximately $14,000.00. This amount will be invested by the trustees in accordance with the terms of said will and the interest thereon or income therefrom will be paid to said Mary T. Cease yearly until the death of the widow of H. P. Tigrett, Sr., at which time out of the residue of the personal estate she, said Mary T. Cease, will be paid the difference between the cash value of the bonds on hand at testator's death plus the interest thereon or income therefrom and $16,500.00 in addition to her one-fourth of the residue of said personal estate.

/s/ H. P. Tigrett, Jr. /s/ Sara N. Tigrett
/s/ Mary T. Cease /s/ I. B. Tigrett "
/s/ Martha T. Wells

Mrs. Cease requested in writing that the trustees delay indefinitely the purchase of the real estate for her under the will because she was not sure what property she wanted and was not sure where she and her husband who is in the government service would settle permanently.

At the time of the trial below there was no issue made as to the legality of the contract relating to Mrs. Cease's devise under the will. The Chancellor held that the trustees had a right to carry out the contract and that all parties denying the same would be estopped to deny the contract.

By assignment of error No. VI the appellants insist that the Chancellor should have construed Item IV of the will relating to the devise to Mrs. Cease and her children. This assignment is well taken and Item IV should be construed by this court.

It clearly appears that the testator intended for the trustees to be guided by the wishes of his daughter, Mrs. Mary T. Cease, in the purchase of real estate for her and that the trustees have properly acceded to her request to delay the purchase of the real estate.

The evidence is not clear as to how the proceeds of the $8,000 in bonds cashed by Mr. Tigrett after writing the will were expended. The bonds remaining had approximately $14,000 cash value at the time of his death. However, counsel stated in argument that Mrs. Cease owed a total of $5,500 to her father's estate at the time of his death. We infer that Mr. Parks Tigrett, Sr. paid $5,000 from the proceeds of the sale of bonds to Mrs. Cease as a loan. The will expressly recited that the indebtednesses of his several children to the testator had been considered by him in making distribution of his property and all was

cancelled except an indebtedness of $500 owed by Mrs. Cease and $2,500 which Mr. Tigrett, Sr. required H. P. Tigrett, Jr. to pay into the estate. Unquestionably the testator intended for debts of his children made after the will to be charged against their portion of the estate. The contract executed by the widow and four children indicates that it was the intention of the testator that Mrs. Cease's portion of the estate be $16,500.

 The bonds have been cashed by the trustees and the net proceeds of approximately $14,000 have been loaned out by the trustees at interest with the knowledge and permission of Mrs. Cease. Mrs. Cease has been receiving the net annual income from this loan. Since the testator expressly excluded the $22,000 cash value of government bonds from the trust for the benefit of the widow, Mrs. Sara Tigrett, in the first sentence of the first paragraph of Item I of his will, we hold that the trustees have properly paid to Mrs. Cease the annual income from the proceeds of the sale of said government bonds and that the income is not subject to the trust for the widow. However, we hold that Mrs. Cease is entitled only to a life estate in said bonds or the proceeds thereof or in the real estate in which said bonds may be invested by the trustees under the terms of the will. Upon her death the fee simple title to the proceeds of said bonds or the real estate in which the proceeds have been invested shall be owned by the descendants of Mrs. Cease as remaindermen under Item IV of said will.

 While we agree with the Chancellor that the parties to the contract are estopped to deny the same, we also agree with the insistence of appellants that the parties could not enter into a contract which would deprive the remaindermen under the will of their rights.

Therefore, we hold that upon the death of Mrs. Sara Tigrett, the contract in favor of Mrs. Mary Cease shall be enforceable and Mrs. Cease shall be entitled to the $2,500 payment out of the trust funds remaining in the hands of the trustees. Provided, however, such $2,500 must be paid out of the interests in the trust fund owned by parties to the contract then living and no portion of the same shall be paid out of interests in said trust funds belonging to children or grandchildren of deceased children of H. Parks Tigrett. Therefore, assignments of error VI and supplemental assignments of error VI and VII all relating to the devise of Mrs. Cease and her husband are sustained.

Supplemental assignment of error No. II pertaining to the action of the Chancellor in refusing to grant a petition for rehearing is overruled.

Item V of the will devised the 150 acres of farm land lying south of the Newbern-Yorkville road in trust for the benefit of Mrs. Martha T. Wells for life with remainder to her descendants or with gift over in the same language of the devise to Mrs. Cease copied above. We agree with the Chancellor that this devise is clear and unambiguous and that it need not be noticed further.

Item VI provides for the devise to W. B. Shibley as trustee for H. P. Tigrett, Jr. 248 acres of the 250 acres owned by testator lying north of the Newbern-Yorkville highway being State Highway No. 77 on which is located the Tigrett, Sr. residence now occupied by Mrs. Sara Tigrett. The trust is for the lifetime of H. P. Tigrett, Jr. with remainder to his children and their descendants with gift over as described in the devise to Mrs. Cease and

Mrs. Wells in Items IV and V of the will. The devise to Mrs. Cease is copied above.

Two acres of the 250 acres are devised in trust for the benefit of Mrs. Martha T. Wells and her descendants along with a sufficient amount of timber to be cut from the 250-acre tract by the trustees to build a reasonable sized home for the use and benefit of Mrs. Wells. Title to the two acres is to be held by the trustees in the same manner as the 150 acres south of the road devised to Mrs. Wells and her descendants under Item V of the will. The testator left the selection of the two acres to the joint discretion of H. P. Tigrett, Jr. and Mrs. Wells but provided that it should be near the homestead. We infer from this provision that the testator was hopeful that their daughter, Mrs. Wells, would make her home near the mother and widow, Mrs. Sara Tigrett. The testator sold most of the merchantable timber from the 250-acre homeplace during his lifetime. Mrs. Wells now lives with her husband in a home on the south side of the highway and has never made request for the use of the two acres nor any of the timber. It is improbable that there is sufficient timber left with which to build a home on the two acres adequate for Mrs. Wells and her family and apparently she does not intend to build a home on the two-acre tract. We rule on this devise later in this opinion.

Item VI further provides that the trustees at the request of the beneficiary, H. P. Tigrett, Jr., may sell the land devised to H. P. Tigrett, Jr. but the proceeds must be reinvested in land and title taken in trust for H. P. Tigrett, Jr. for life with remainder as above provided.

Item VI concludes with the following paragraph:

"The above devise for the use and benefit of said H. P. Tigrett, Jr., is made to become effective only and when the said H. P. Tigrett, Jr. shall convey by proper instrument so as to pass title thereto as hereinafter set out his, said H. P. Tigrett, Jr.'s 133 acre tract, more or less, in the Ninth Civil District of Dyer County, Tennessee, bounded on the South by Highway No. 77, on the East by above described 250 acre tract, on the North by lands of Williams estate and lands of Irby, on the West by Scobey, Irby and Owens lands, or in lieu thereof as hereinafter provided."

Item VII provides as follows:

"I hereby will and devise to my son, H. P. Tigrett, Jr., and W. B. Shibley, trustees, for the use and benefit of my son I. B. Tigrett, for and during his natural life with remainder at his death to his child, children or descendants of same, the child or children of any de-deceased child taking the parent's share and in the event the said I. B. Tigrett dies without child, children or descendants of same then title thereto shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes, the 133 acre tract to be deeded to the trustees for the use and benefit of him, said I. B. Tigrett, by said H. P. Tigrett, Jr., (or and in lieu thereof said H. P. Tigrett, Jr., may purchase land of the value of $17,500.00 taking title thereto in the name of said trustees for the use and benefit of said I. B. Tigrett, with remainder as above set out) which together with property already given and conveyed to him, my son I. B. Tigrett, in my judgment, makes him an equal beneficiary under this will. * * *"

Further in Item VII the trustees are given the right to sell the land if the beneficiary, I. B. Tigrett, desires

but the proceeds shall be reinvested in land and the title taken in trust for I. B. Tigrett for life with remainder as above set out in the other devises.

After the institution of the present lawsuit, I. B. Tigrett moved from his home in Newborn to Memphis. With his permission the trustees have sold the property for $4,000 but have not as yet reinvested it in other real estate.

H. P. Tigrett, Jr. testified that his father had made a prior will containing similar provisions relating to the deeding of the 133-acre tract of land and he, H. P. Tigrett, told his father that he was unwilling to deed away his 133-acre tract because he was only receiving a life estate in the 250-acre home place (less two acres) and that his father then, when he rewrote the will now under construction, added the alternative of allowing H. P. Tigrett, Jr. to purchase real estate of a value of $17,500 in lieu of deeding his 133-acre tract of land in trust for the benefit of Isaac B. Tigrett for life and his remaindermen. Mr. Tigrett, Jr. stated that his father told him he was completely satisfied with the will as finally drawn and that his father wanted the 250 acres north of the road kept intact.

The Chancellor found that it was the intention of the testator that H. P. Tigrett, Jr. either convey his 133-acre tract of land in trust for the benefit of Isaac B. Tigrett as set out in the will or in lieu thereof purchase farm land of a value of $17,500 for the benefit of Isaac B. Tigrett and his remaindermen within a reasonable time after the death of the testator and not await the death of the widow, Mrs. Sara Tigrett. Further, the Chancellor found that H. P. Tigrett, Jr. should have

followed the provisions of the will by making the purchase of the land not more than eighteen months after the death of the testator and that he had failed so to do and that therefore he had not acted within a reasonable time, and that the deeding of the 133 acres or in the alternative the purchasing of land of a value of $17,500 were charges against the interest devised to H. P. Tigrett, Jr. by the testator. Further, the Chancellor found that the value of land in the area since the death of the testator had increased so much and correspondingly the purchasing power of $17,500 in terms of land had decreased so much that at the time of the rendering of the decree on April 3, 1965, the purpose and intent of the testator to give Isaac B. Tigrett and his remaindermen a devise in real estate substantially equal to that given to H. P. Tigrett, Jr. and Mrs. Wells could not be accomplished by buying land of a present value of $17,500.

Thereupon, the Chancellor held that since H. P. Tigrett, Jr. refused to deed his 133-acre tract of land, I. B. Tigrett and his remaindermen were entitled to a life estate in a portion of the 250-acre homeplace equal in value to the 133-acre tract of land which the testator had required H. P. Tigrett, Jr. to convey in trust for him and his remaindermen and that only in this way could I. B. Tigrett and his remaindermen be given a gift of realty substantially equal to that given to H. P. Tigrett, Jr. and Mrs. Wells and their remaindermen.

Defendant H. P. Tigrett, Jr. was given ninety days within which to elect whether to make conveyance of the 133 acres or allow his devise to be reduced by the value of the 133-acre tract. The Chancellor ordered a reference, if necessary, to determine the value of the 133-acre tract

of land and determine how much of the 250 acre home-place would be equal in value to the 133-acre tract. It is from this portion of the Chancellor's decree that the defendant, H. P. Tigrett, Jr., individually, and H. P. Tigrett, Jr. and William B. Shibley, executors-trustees, have prosecuted their appeal.

They contend, first, that I. B. Tigrett is estopped to bring the present lawsuit at this time because he allegedly told H. P. Tigrett, Jr. that he would not accept any land purchased for him by the trustees. We think the preponderance of the proof is that the complainant, Isaac B. Tigrett, after he and the trustees had discussed several tracts or parcels of land had been unable to agree on the purchase of a tract of land, told the trustees, one or both of them, that he would not accept any tract which they purchased for him if he had to put any of his personal funds into the purchase. Even though the complainant, Isaac B. Tigrett, did at first acquiesce in the interpretation and construction of Item VII of the will as contended by H. P. Tigrett, Jr. that H. P. Tigrett, Jr. would not have to pay the $17,500 until after the death of their mother no prejudice resulted to the trustees or to H. P. Tigrett, Jr. by virtue of such acquiescence. The bequest of Isaac B. Tigrett for the purchase of a tract of farm land was not consummated.

I. B. Tigrett very clearly saw that the price of farm land was steadily increasing and that he and his remaindermen stood to lose a great deal as devisees under the will of H. P. Tigrett, Sr. unless the purchase of real estate in his name was made very shortly. We think he very properly brought a suit in the Chancery Court for a construction of the will of H. P. Tigrett, Sr. Therefore, we find no merit in the insistence of the appellants that

Isaac B. Tigrett was estopped to bring this present lawsuit.

Further, the appellants insist that His Honor the Chancellor was in error in holding that the $17,500 should have been invested by H. P. Tigrett, Jr. for the benefit of Isaac B. Tigrett and his remaindermen within eighteen months after the death of the testator and in not construing the will to provide that H. P. Tigrett, Jr. could wait until after the death of the life tenant, Mrs. Sara Tigrett, before he was required to purchase real estate in the amount of $17,500 or deed the 133-acre tract in trust for I. B. Tigrett. They predicate this contention upon the authority of Brannon v. Mercer, 138 Tenn. 415, 198 S.W. 253. The Chancellor was of opinion that Brannon v. Mercer is distinguishable of the case at bar and therefore not controlled by it. A succinct statement of the Brannon case is as follows:

In 1886 the testatrix, Mrs. Martha Sunderland, devised her farm to her husband, J. E. Sunderland, for life, then to her sister, Alice Robinson, also for life. Remainder in fee was devised to a niece, Blanche Raymond Robinson, on condition that she pay each of two legatees $1,000.

The testatrix died November 18, 1901; her husband and life tenant survived until July 21, 1912; Mrs. Alice Robinson, the second life tenant, had died on July 3, 1910. Blanche R. Robinson, the remainderman, the daughter of Alice Robinson, had died on May 5, 1903, without paying the two $1,000 legacies.

Shortly after the husband and first life tenant died on July 21, 1912, the bill was filed on September 4, 1913, by Mary Louisa Talbott Brannon and others as devisees under the third codicil contending that a default was

made in the payment of their legacies by Blanche Robinson as devisee and that therefore under the terms of the fourth clause of the will they were entitled to have the land sold and to recover two-thirds of the proceeds of sale. The defendant claimed under Mrs. Blanche R. Robinson, devisee, who died without issue.

The Chancellor held that the condition imposed on Blanche R. Robinson was one subsequent and that there had been no refusal on the part of the devisee in remainder to pay the legacies. The Court of Civil Appeals in a two to one decision reversed holding that the condition for the remainder to vest was on a condition precedent and that there had been a refusal to pay the legacies. The Supreme Court reversed. From the opinion of Mr. Justice Williams we copy as follows:

"* * * It is manifest from the proof in the record that the devisee was poor and without resources with which to meet the requirement that she pay the legacies; and the reasonable implication is that the testator, who had favored the devisee's mother, Alice Robinson, with the grant of the immediately preceding life estate in remainder, did not intend to mock her niece by granting her property upon a condition impracticable of being performed by her. Rather, the inference should be, in accord with (d) of the indicia above, that as the ability to comply depended upon the enjoyment of the property devised, the payments were to be made when the remainder in fee became consummate—here on the falling in of the life estates upon which it was limited. Laurens v. Lucas, 6 Rich.Eq. (S.C.) 217; Birmingham v. Lesan, 77 Me. 494, 1 Atl. 151.

The position of the complainants is that the devisee must have made the payments and waited through a period of time covering two life estates before enjoyment. Such a construction would be a harsh one, indeed, and one not to be adopted unless the court is compelled to do so by language of undoubted import. * * * ''

We concur with Chancellor Gray that Brannon v. Mercer, supra, is not controlling of the case at bar because the determinative circumstances are distinctively different from the facts and circumstances of the case at bar. Mr. Tigrett, Sr. had two dominant purposes in mind in making his will: First, to make sure that his widow was amply provided for for the remainder of her life. This he took care of by allocating all of the annual income from his 400-acre farm in trust with right of the trustees to encroach on the corpus if necessary to properly care for his widow.

Second, his intention was to give each of his four children an inheritance in real estate substantially equal in value for their respective lives with remainder to their descendants in fee. It did not seem practical to the testator to divide his 400-acre farm into separate tracts of 100 acres each and therefore he adopted the following method to accomplish his dominant intention, to wit: For his daughter, Mrs. Cease, whose husband was not a farmer, he earmarked $22,000 cash value of government bonds for the purchase of real estate at some place convenient and satisfactory to her.

For his daughter, Mrs. Wells, whose husband is a farmer, the testator set apart the 150 acres on the south side of the highway and also gave her the right to build a home on the north side of the highway near the residence of Mr. and Mrs. Tigrett, Sr.

Now, for his two sons, H. P. Tigrett, Jr. and I. B. Tigrett, Mr. Tigrett, the testator, had 248 acres of the homeplace left but because of the lay of the land and possibly other reasons the testator preferred not to divide the homeplace but wanted his eldest son, H. P. Tigrett, Jr., to have the entire homeplace of 248 acres. To accomplish this and still give his son, I. B. Tigrett, and his descendants a comparable amount of real estate as an inheritance the testator provided that H. P. Tigrett, Jr. should deed in trust for I. B. Tigrett, et al, the 133 acres lying immediately east of the homeplace.

When H. P. Tigrett, Jr. expressed his reluctance to do so, his father, the testator, changed his will and gave H. P. Tigrett, Jr. the additional option of purchasing for I. B. Tigrett, et al, other lands of a value of $17,500 (he already had given I. B. Tigrett, et al, a home in Newbern, Tennessee, valued at $5,000). We concur with the finding of the Chancellor below that it was the intention and purpose of the testator as expressed in his will that H. P. Tigrett, Jr. make his election within a reasonable time after the death of his father as to whether he would convey his 133-acre tract of land in trust for I. B. Tigrett as a condition to receiving for himself and his descendants the full 248 acres of his father's homeplace or in lieu thereof purchase other lands of a value of $17,500 for the benefit of I. B. Tigrett, et al, thus complying with the express wishes of the testator.

We disagree with His Honor the Chancellor that the testator intended for the annual income from the 133 acres or the land purchased of a value of $17,500 would become part of the trust fund for the support of Mrs. Tigrett, Sr. Such a requirement would have been unfair

to H. P. Tigrett, Jr. because the annual income from the 248 acres of the homeplace which he was to receive was to be held in trust for the support of his mother, Mrs. Sara Tigrett. We think the testator fully intended that H. P. Tigrett, Jr. receive the annual income from the 133 acres until his mother died and H. P. Tigrett, Jr. got possession of the homeplace; or in the alternative that he receive the income from the $17,500 tract purchased by him for I. B. Tigrett, et al, until his mother died when I. B. Tigrett would get possession of the $17,500 tract and H. P. Tigrett, Jr. would get possession of the 248-acre homeplace. If either had been done then both the letter and the spirit of the will of H. P. Tigrett, Sr. would have been complied with. There is no real contention that H. P. Tigrett, Jr. was not financially able to meet the condition of the devise as was true in Brannon v. Mercer, supra.

Not only does the record show but this Court takes judicial notice that since 1958 there has been a great inflation in the value of farm land in West Tennessee, and particularly in the Newbern, Tennessee, area. Much of the farm land in this area has more than doubled in value since 1958. We concur in the finding of the Chancellor that because of the great increase in the value of farm land and the corresponding decrease in the purchasing power of the dollar that now it is impossible for H. P. Tigrett, Jr. to comply with one of the conditions of the gift. He cannot purchase sufficient farm land for $17,500 to give Isaac B. Tigrett and his descendants an inheritance in real estate comparable in value to that intended by his father, the testator. The other condition of the gift can be complied with by H. P. Tigrett, Jr. deeding over his 133-acre tract of land in trust for I. B.

Tigrett, et al, reserving, of course, the rentals therefrom to himself for the lifetime of his mother, Mrs. Sara Tigrett. If H. P. Tigrett, Jr. is still unwilling to do this, then we agree with the Chancellor that the only way to carry out the testator's dominant purpose of giving I. B. Tigrett and his descendants a comparably equal devise of real estate is to award I. B. Tigrett and his descendants a portion of the 250-acre homeplace equal in value to the H. P. Tigrett, Jr. 133-acre tract.

There are ample authorities in our Tennessee case law for such decree.

In the case of Mears v. Wharton, 1914, 5 Higgins 329, cited by the Chancellor, by will dated November 25, 1904, the testator gave three legatees (a brother, a sister, and a sister-in-law) $1,000 value of bank stock for life. To the fourth legatee, a brother, he awarded five shares of bank stock par value of $500 and also a specific bequest of $575 in order to make his bequest equal to the first three legatees. To the fifth legatee, his sister, he awarded a specific bequest of $1,150 to make her award equal to the first four legatees. The testator died in May, 1913, at which time the sale value of the stock was $200 per share. At the date of the making of the will the sale values were $115 which value the testator had used in making up his bequests. If the value at the date of the death of $200 per share is used then three legatees would receive $2,000 each, one legatee would receive $1,575 and another legatee would receive only $1,150. From the opinion of the court we quote as follows:

"* * * In none of the cases cited has the Court laid down, as a hard and fast rule, that any particular date must be taken at which the property devised, or

bequeathed, should be valued. The main object and effort of the Courts seem to be, first, to ascertain the intention of the testator and then to carry it into effect. It being determined that the testator wanted his estate divided equally between his children, then the Court take such date to fix its value as will carry out the will of the testator, and divide it equally between the objects of his bounty. If it were necessary to take its value at the date the will was made, in order to equalize the legacies and thereby carry out the controlling intention of the testator, the Courts would not hesitate to do so. It is likewise true that, if necessary to carry out the intention of the testator and to give to each legatee an equal share of his bounty, to fix a value on his estate at the date of his death, or a reasonable time thereafter, the Courts would not hesitate to take its value at such date.

"In the case under consideration, it being apparent that the testator's wish and desire was that each of his legatees should receive an equal share of his estate, and it not being feasible to carry out that intention unless the value of his estate is taken as of the date of his death, and it being the duty of the Court to carry out his intention if it can be done without contravening any fixed law or public policy, we see no escape from our duty in this case, in holding that the value of these legacies must be fixed as of the date of the death of the testator. The proof shows that the market value of the bank stock is $200.00 a share, and in equalizing the shares of these legatees, the value of this stock will be fixed at these figures, and G. B. Mears and Mrs. Miller, or her heirs, will be paid out of the residum a sufficient amount of money to make

their legacies equal in value to that of the three other legatees; that is, G. B. Mears will receive in addition to the five shares of stock and $575.00 in money, $425.00 in money out of the residuary estate; and Mrs. Miller will be paid by the executors $850.00 out of such residum, and in this way the shares of each of the legatees will be equalized as the testator manifestly intended they should be, and it results that the decree of the Chancellor is, in all respects, affirmed with costs."

In the case of Wirt v. Cannon, 1867, 4 Cold. 121, we quote from the syllabus as follows:

"2. Same (Construction of Wills). Case of Judgment. The testator devised his real estate to two of his children, Finis E. and Sarah, and then declares, 'That full justice may be done, it is my wish that my son, John Wirt, may be equal with my other two children in the division of the land, out of money he now owes me.' The intention of the testator being to make his children equal; and the indebtedness of John to the testator not being equal to the shares of his brother and sister, he is entitled to a sufficiency out of the residue of the estate, after paying the specific legacies, to make his share equal to the portion of land allotted to his brother."

From the case of Johnson v. Covington, 1922, 148 Tenn. 47, 251 S.W. 893, also cited by the Chancellor, we copy the syllabus as follows:

"9. WILLS. Bequest in terms to son-in-law construed as gift to daughter, and daughter required to contribute where claiming as her own land devised to others.

Where a testator by the language of the several bequests and by a contemporaneous written declaration evidenced an intent to give equal shares of his estate to each of his children, though in the will he mentioned previous gifts to his sons-in-law, testator's evident intention was that the bequest to each son-in-law was intended as a gift to the daughter; and, where testator's heirs elected to claim real estate to which they were entitled as remaindermen under their grandfather's will, devising to their father only a life estate, each of the heirs, including the married daughters, were required to contribute to the loss of the disappointed devisee to whom testator had undertaken to give the land in question. (Post. pp. 82-84.)''

■ Complainant I. B. Tigrett and his descendants have lost a substantial portion of their inheritance because H. P. Tigrett, Jr. failed to comply with either of the two conditions of the will within a reasonable time after the death of the testator. This was through no fault of I. B. Tigrett even though H. P. Tigrett, Jr. acted in good faith. To prevent a miscarriage of justice it is necessary that H. P. Tigrett, Jr. share the 248-acre homeplace devise with I. B. Tigrett and his descendants. Such relief is akin to the equitable remedies of contribution and exoneration. The decree of the Chancellor awarding an interest to I. B. Tigrett, et al, in said 248-acre homeplace and ordering a reference to ascertain the value of the 133-acre tract is affirmed with the modification that if H. P. Tigrett, Jr. should elect to convey in trust his 133-acre tract as provided in the will he will be entitled to receive the income therefrom until the death of his mother, Mrs. Sara Tigrett.

Upon a remand of this case if H. P. Tigrett, Jr. still refuses to deed the 133-acre tract of land in trust as provided by the will for the benefit of I. B. Tigrett and his descendants, then a reference will be had to the Clerk & Master to determine the value of the 133-acre tract of land as of the date of the reference. The Clerk & Master will go upon the 250-acre H. P. Tigrett, Sr. homeplace (Mrs. Wells is entitled to two acres of this under the will) and measure and set apart for the benefit of I. B. Tigrett and his descendants a portion of the 250-acre homeplace equal in value to the 133 acres owned by H. P. Tigrett, Jr. and report his action to the Chancellor for confirmation. H. P. Tigrett, Jr. shall, of course, have the right to file exceptions as in other references by the Clerk & Master. Assignments of error, I, II, V, and VII and supplemental assignments of error I, II, V, and VIII are overruled.

Supplemental assignment of error No. IV is as follows:

"The Chancery Court did not further consider and construe the will and the intention of its testator as testified by W. B. Shibley and Gen. John M. Drane, which evidence we respectfully submit as competent."

Assuming, but not deciding, that it was competent for the witnesses, W. B. Shibley, co-executor, and Hon. John Drane, draftsman of the will, to testify concerning the intentions of the testator, it was for the Chancery Court and later for this Court on appeal to determine the primary and dominant intentions of the testator in the light of the express terms and provisions of the will itself as well as the facts and circumstances surrounding the execution of said will. This Court has considered the testimony of both Mr. Shibley and Gen. Drane but

are of opinion that the Chancellor reached the correct result and we have affirmed his action. Supplemental assignment of error No. IV is overruled.

Appellants, in their brief, have questioned the decree of the Chancellor assessing the four children of testator with the payment of any balance due on state and federal inheritance taxes after the exhaustion of personal property of the estate. While the executor-trustees have never filed a formal accounting, the proof shows that Mr. Tigrett, Sr. had $2,800 on deposit in the bank at the time of his death. H. Parks Tigrett, Jr. paid into the estate $2,500 as required by the will. Presumably all of the debts of the estate have been paid including state and federal inheritance taxes. There was a balance of $600 in the executor-trustee bank account in October, 1966, when Mr. Shibley testified.

The executors testified that they borrowed $5,000 from the bank to finish paying state and federal inheritance taxes and H. P. Tigrett, Jr. and Mrs. Mary Wells signed the note as sureties. Out of the income from the lands, this note has been reduced to $3,200. It is anticipated that future rentals over and above the support for Mrs. Tigrett will be sufficient to retire the note. Since the residuary estate under the will after the death of Mrs. Tigrett, Sr. goes to all four children equally, and since the children all seem satisfied with this plan of paying the inheritance taxes and debts, it is approved. If Mrs. Tigrett, Sr. should die before the costs of administration, including state and federal inheritance taxes, have been paid, then the four children shall be liable jointly and severally for the payment of the deficiency.

■ Assignment of error III complains of the action of the Chancellor in ordering a reference to determine fees to be paid solicitors for all the parties, insisting that only solicitors for the executor-trustees should be paid out of the funds in the hands of the executor-trustees. It was well within the discretion of the Chancellor to find that the petition for a construction of the will of H. P. Tigrett, Sr. was necessary and that their services inured to the benefit of the estate, and that such fees should be paid as part of the costs of administration of the estate. Phillips' "Pritchard on Wills," Section 378A and 655; Boulton v. Cochran, 41 Tenn.App. 43, 292 S.W.2d 511; Moore v. Neely, 212 Tenn. 496, 370 S.W.2d 537. The assignment is therefore respectfully overruled.

The trustees have asked in their answer and cross-bill when Mrs. Wells shall select the two acres of land and timber. The Chancellor left it indefinite as to when, if ever, Mrs. Wells was required to make a selection of the two acres of land. We do not think the testator intended to require Mrs. Wells to build and live in a home on the two acres and we hold that she does have the right to forego the erection of a home thereon.

However, since the two acres were devised to her for her lifetime with remainder to her descendants, we hold that a selection must be made of the two acres. Since it appears probable that H. P. Tigrett, Jr. will not convey his 133-acre tract for the benefit of I. B. Tigrett, and it is most probable in lieu thereof I. B. Tigrett and his descendants will be awarded a portion of the 250-acre homeplace, it becomes necessary that said two-acre tract be selected prior to the determination by the lower court of the portion of the homeplace to be alloted in trust for I. B. Tigrett and his descendants. Upon a remand of the

case Mrs. Martha T. Wells and H. P. Tigrett, Jr. are directed to make selection of the two-acre tract of land as provided by Item VI of the testator's will for the benefit of Mrs. Wells and her descendants. The trustees are directed to sell the merchantable timber (exclusive of shade and/or ornamental trees) and to hold the proceeds in trust for the benefit of Mrs. Martha Wells and her descendants. If Mrs. Wells elects not to build a home on the two acres the trustees shall have the discretion to expend said proceeds of timber for the permanent improvement of either the two-acre tract or the 150 acres lying south of the road since both were devised in trust for the benefit of Mrs. Martha Wells and her descendants.

A complete construction of the will of H. P. Tigrett, Sr. requires adjudication of all the rights of the parties. We think it proper for this court to make further adjudications even though they are not the subject of assignments of error. It appears that H. P. Tigrett, Jr. has been accustomed to renting the 250-acre homeplace and the 150-acre farm devised for the benefit of Mrs. Wells and her descendants from year to year on the basis of one-fourth of the cotton produced and $8.00 per acre cash rent for the remainder of the land. There are some 40 to 50 acres of cotton. H. P. Tigrett, Jr. has been paying an annual rental of about $5,000. Objection has been made by the solicitors for 1. B. Tigrett that H. P. Tigrett, Jr. is not paying sufficient rental per year for the farm land.

The evidence is insufficient for this court to make an intelligent adjudication as to the amount of annual rent. H. P. Tigrett, Jr. is a trustee of the income of the 400 acres for the benefit of his mother and the four children

of H. P. Tigrett, Sr. Therefore, he is in the position of renting from himself. Under these circumstances, we think a reference should be had to the Clerk & Master to determine a reasonable annual rental of said lands and H. P. Tigrett, Jr. should be given the opportunity to rent said farm land at such rental. If he no longer wishes to rent the farm land himself then, of course, the trustees are obligated to rent the farm lands to other persons for the best price obtainable.

In order that the rights of all the parties to this litigation, including contingent beneficiaries and remaindermen, may be adjudicated and protected, we think it proper that the executors and trustees file a full and complete report with the Chancery Court of Dyer County accounting for all funds coming into their hands both as executors and as trustees and showing all disbursements made by them. They will also report on their plans to reinvest the $4,000 now held by them representing the sale of the I. B. Tigrett home in Newbern, Tennessee. Said executors and trustees will also make annual accounting to the Chancery Court of Dyer County, Tennessee, until the estate of H. Parks Tigrett, Sr. is fully administered and the trusts created both by will and deed of H. Parks Tigrett, Sr. are terminated.

All assignments of error not herein sustained are overruled. A decree will be entered in accord with this opinion and the case will be remanded to the Chancery Court for further proceedings consistent herewith. The costs (exclusive of attorneys' fees) in the court below and in this court will be taxed one-half against H. P. Tigrett, Jr., individually, and one-half against the estate of H. P. Tigrett, Sr. T.C.A. Section 20-1621.

Upon the trial of this cause, Judge L. D. Bejach was unable to be present and Hon. John C. Nowell of Trenton, Tennessee Bar sat as Special Judge by consent of all the parties.

Avery, P. J. (W. S.), dissents in part.

John C. Nowell, Special Judge, concurs.

Avery, P. J. (W. S.) (dissenting in part).

I agree with the majority opinion that the controversy between the two sons of the testator, H. P. Tigrett, Jr. and I. B. Tigrett, is the principal cause of this litigation, which and that on the record now before us we must, by our own decree, settle all the issues between these two sons that can be done at this time. I agree that the Court below and this Court should determine the proper construction of the will relating to the time H. P. Tigrett, Jr. must comply with the will granting him the option of conveying his 133 acres of land to the trustees, for the property decreed for H. P. Tigrett, Jr. with the trust and other limitations required by the will, or in lieu thereof, pay to the trustees $17,500 with which to purchase land, taking title therto in themselves in trust, as provided by the will, for I. B. Tigrett and his child or children.

I do not agree with the majority opinion that H. P. Tigrett, Jr. can, within the time stated in the decree of the trial Court or the majority opinion, now rid himself of all obligation to the trust fund, created or intended to be created under the will, to be preserved by the trustees until the death of Mrs. Parks Tigrett, Sr. by now simply conveying the 133 acres to the trustees or paying

the bare $17,500 to them for the purchase of land for I. B. Tigrett.

It is undisputed that H. Parks Tigrett, Sr. executed a prior will that provided no option whatever with respect to the requirement that H. P. Tigrett, Jr. convey the 133 acres to the trustees before he could take any devise under his father's will, and that it was destroyed and revoked by the second will at the request of H. P. Tigrett, Jr., and the option of paying the $17,500 was the value that he and his father both agreed at that time of the 133 acres and both were well aware of that fixed value.

H. P. Tigrett, Jr. in his deposition in this case, in substance so states more than once. Here is a part of what he said:

"Q—Mr. Tigrett, I am sure you have read your father's will very carefully many times, have you not?

A—Yes, sir.

Q—And is it not the intention of your father that all of the children share equally under his will?

A—At the time he wrote his will that was exactly right.

Q—Is that not what the will says?

A—I don't believe he thought or any one could have looked forward into the future and predicted what would happen. All he could do in all fairness to everybody was to make it fair at that time.

Q—That was his intention anyway?

A—Yes, sir.

Q—That all children share equally under his will?

A—Yes, sir.''

I agree with the statements in the majority opinion from which it can be inferred that the value of the 133 acres has increased through the years in the same proportions that the value of the 250 acres home farm has increased, and that if H. P. Tigrett, Jr. now conveyed the 133 acres, as provided by the will, there would be represented a comparative value of the respective devises, not only as between the sons of testator, but as between all four children, but nothing is plainer than H. P. Tigrett, Jr. has repeatedly refused to do so. Had he done so at the proper time the proceeds, rents and profits therefrom would have rightfully gone into the testamentary created trust fund. Likewise to the same effect had he paid the $17,500 to the trustees and the lands been purchased therewith, as required by the will, the rents and profits from that land would, if the trustees had complied with the will, have gone into the trust fund. So it is that the trust fund is that which has suffered by the failure of H. P. Tigrett, Jr. to properly and in right time exercise one of the optional requirements of the will.

The result is that he has had ''his cake and eaten it at the same time'' over the years. He has gotten rents from the 133 acres for all these years, which the testator intended should go into the trust fund account, and has likewise had the use of the $17,500 at the same time. If he had that money he has gotten the use of it and the rent from the 133 acres at the same time. If he did not have the money, he has saved for himself at least the interest thereon which his father did not mean for him to do.

Therefore, as I construe the meaning of the will, as applied to the equities of all the beneficiaries, H. P. Tigrett, Jr. should also be required to pay into this trust fund, after the 250 acres is divided or apportioned as required by the decree of the Chancellor, and by the majority opinion, if he now or in compliance with the decree, conveys the 133 acres as permitted to do so under the decree and majority opinion, or elects to exercise the $17,500 optional provision, he should be also required to pay to the trustees for the use of I. B. Tigrett and his child or children, an amount of money equivalent to 6% interest per annum on the $17,500 from the date the Court determines the testator meant to fix that as an optional value of the 133 acres, which, in my opinion, must either be from:

1st—the date of the will, or

2nd—from the date of a reasonable time after the probation of the will, which end of the interest period must await the enforcement of the decree of the Chancellor as approved by the majority opinion and directions therein contained, and in event H. P. Tigrett, Jr. continues to refuse to do either within the time fixed in the majority opinion for his exercise of such option, he be held to have renounced the provision of the will in regard to the bequest for his benefit.

I do not agree with the majority opinion relating to the bequest in behalf of Mrs. Cease. I do not agree that the testator meant, nor that his will, from its "four corners" can properly be construed to so mean that "the testator expressly excluded the $22,000 from the trust".

Let us look for a moment at the deed to his son, I. B. Tigrett in 1946, which date indicates was at about the time he executed his first will, and I think we will be able to see the beginning of his intention to devise each child real estate and particularly land. In that deed he names the same trustees, the same as he did in his will, to use, manage and control the devise to I. B. Tigrett. That deed contains the following:

"* * * have this day bargained, sold, transferred and conveyed and by these presents do hereby bargain, sell, transfer and convey unto H. P. Tigrett, Jr., and W. B. Shibley, Trustees, for the use and benefit of the said Isaac Tigrett, for and during his natural life with remainder at his death to his child or children, its or their heirs and assigns, forever, in fee simple, the following described house and lot * * *

"TO HAVE AND TO HOLD said property unto the said Trustees for the use and benefit of the said Isaac Tigrett for and during his natural life with remainder at his death to his child or children, its or their heirs and assigns forever in fee simple.

"Said trustees are hereby given the absolute right and authority, to handle, control and manage said property for the use and benefit of the said Isaac Tigrett for and during his life and if they deem it practicable and to the best interest of the said Isaac Tigrett they shall sell said property and are vested with full power and authority to make a good and valid deed thereto, and reinvest proceeds of the sale in real estate taking title to the same extent and in the same manner as the title is herein vested. Upon the death of the said Isaac Tigrett this trusteeship herein created shall cease and

the title to the said property is vested *now* in the child or children, its or their heirs and assigns forever, of the said Isaac Tigrett, subject to the trusteeship for and during his life, as aforesaid.'' (Emphasis added)

The word ''now'' meant something to the grantors and means something to me. In trying to put myself in the same position of the testator as I undertake to construe his will, it means the remainder is a vested one, and the verbiage of the will means, as to all grandchildren it is a vested one.

Let us now bring together, in a paraphrasing way what the will declares to be the bequest to Mrs. Cease, as follows:

''I hereby give, will, bequeath and devise all of my estate, real, personal and mixed, to my son, H. P. Tigrett, Jr., and my nephew, W. B. Shibley, jointly, as trustees, with the exception of $22,000.00 in cash value of government bonds which is disposed of as hereinafter provided for the sole use and benefit of my wife, Sara N. Tigrett, for and during her natural life, with remainder as hereinafter provided. * * *

''I have on hand at the present time bonds for the purpose of purchasing real estate for the use and benefit of my daughter, Mary T. Cease. However, I may not make this purchase before my death and in such event I hereby will and direct that said trustees reduce to cash $22,000.00 of said bonds and purchase therewith farm lands at such location and in accordance with the wishes of my said daughter, Mary T. Cease, and the title of said land shall be in the said trustees, H. P. Tigrett, Jr., and W. B. Shipley, for the use and benefit of my said daughter for and during

her natural life only, at which time said trust shall end and said land become the absolute property of any child, children or descendants of children of my said daughter equally, the child or children of any deceased child taking the parent's share and in the event my said daughter, Mary T. Cease, shall die leaving no child, children or descendants of same then the title to said property shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes.''

Why would the testator provide that the trustees expend the $22,000 for land and take deed so that it became a part of the socalled ''trust'' and then leave the value of the land out of the trust? It would be much easier to spend the $22,000 than it would to convey the land that it purchased and why would the testator limit the title to three of his children and leave the other one free to defeat the intention of the testator that her children ''take it at her death''?

I do not agree that the document referred to in the majority opinion as a ''contract'' limits the specific provisions of the will as I understand it, nor do I construe the referred to ''contract'' to be anything except a statement to be submitted to the Common Law and Chancery Court of Dyer County, for construction and decree, which was never done and is therefore no contract.

In my opinion the income from the investment of the $22,000 or any part of it paid to Mrs. Cease is a part of the ''trust fund'' to be accounted for on the death of Mrs. Tigrett, Sr. I do agree that Mrs. Cease must account for the mysterious $5,000 or $8,000 in bonds mentioned in the majority opinion, as something that the

testator expended prior to his death, for there seems to be wholly insufficient proof that he, the testator, did so. To so conclude seems to me to be pure speculation. Certainly Mrs. Cease must account to the trust fund for the income she has received from that $22,000, or what part thereof she receives income from, to the date of the death of Mrs. Tigrett, Sr.

The express provision in the will with respect to the creation of the trust fund and disbursements therefrom are as follows:

"Said trustees are hereby given full authority to manage and control all of said property and to sell any of the personal property for the purpose of reinvestment or otherwise. All proceeds arising from the management and control of said property and the sale or sales thereof and the revenue and income from my farm and other property to be held by said trustees for the use and benefit of my said wife.

"All funds coming into the hands of said trustees as such shall be deposited in bank to them as trustees for the purposes hereinafter stated. * * *

"Said trustees shall keep a true and correct account of all their transactions and activities as such trustees which record shall be available to any and all interested beneficiaries hereunder and they shall make payments out of this trust fund as and in accordance with the reasonable wishes and desires of my said wife."

I do not find any serious fault with the majority opinion respecting the bequests or devise to Mrs. Wells, but the lower Court was requested by the cross-bill to determine nine specific matters, to some of which he did not

respond and which nine requests are before this Court
as follows:

"1. Whether the inheritance taxes paid and to be paid
by the executors are chargeable to the respective chil-
dren, beneficiaries of the will, and if so, an order and
decree for the respective payments to be entered;

"2. When shall Mrs. Martha T. Wells select her 2 acres
of land for building purposes, and whether she may do
so within a reasonable time after Mrs. Tigrett's death,
when the remaining assets of H. P. Tigrett's Sr. and
trust accumulations are definitely known; and which
these defendants aver was the purpose and interest of
H. P. Tigrett, Sr.;

"3. When should Mrs. Martha T. Wells select her tim-
ber for building purposes, as provided for in the will;

"4. Should the wants, needs and requirements of Mrs.
Sara N. Tigrett, widow, exceed the trust income and
remaining personal property, may the trustees sell off
the land and/or timber, or incumber the lands by trust
deeds for those purposes, and if so, in what propor-
tions;

"5. May lands valued at $17,500.00 be purchased by
H. P. Tigrett, Jr., as provided in the will, for I. B.
Tigrett, whether he selects it and its location, from
lands available for purchase, which H. P. Tigrett, Jr.
avers he has the individual right to do, upon the con-
tinued refusal of I. B. Tigrett;

"6. Should the tract of land desired to be purchased
exceed $17,500.00 in value, may the difference be paid
from the final distribution of the personal estate and
trust accumulations from the shares of the respective

beneficiaries remaining at the death of Mrs. Sara N. Tigrett, widow; and should the land purchased approximate the $17,500.00, may the difference be held in trust as though it was land and as provided for in the will for the trusts created?

"7. How and from what funds may the trustees' attorney fees in this suit be paid, so that each of the four children and their estates contribute thereto;

"8. Do the defendants, as trustees, have the right and power to carry out the agreement made with Mrs. Mary T. Cease;

"9. All such other, further, general and special relief, as they are entitled to under the facts and will of H. P. Tigrett, Sr."

It, therefore, seems that it may be necessary on the death of Mrs. Tigrett Sr. to then marshal the assets of the entire estate in order to properly decree the answers to above requests, or some of them.

It is, therefore, my opinion that we should not, at this time, decree further or otherwise than as suggested in this dissenting opinion as to the litigation relating to the optional demand of H. P. Tigrett, Jr. and the bequest to Mrs. Cease, and to do so with certainty, would be speculating on the date of the death of Mrs. Tigrett, Sr.

It is clear that the executors and trustees have neither complied with the provisions of the will nor the law governing their relationship and duties. They have not correctly or properly complied with the decree of this Court to supply the record on remand. The filing of fiduciary income tax reports in no wise complies with

their required accounting, keeping and disbursement of the trust fund.

It is entirely possible that on the death of Mrs. Tigrett, Sr. there may have to be a marshalling of assets to completely and properly comply with the provisions of the will relating to the trust fund and the remainder interests in the several areas of real estate, particularly relating to the provisions of the class doctrine enunciated in the case of Walker v. Applebury, 218 Tenn. 91, 400 S.W.2d 865.

The case should be, in my opinion, remanded to the Chancery Court of Dyer County with instructions that the Court give no further or other consideration to the further issues until the death of Mrs. Tigrett, Sr., at which time all questions can and should be finally determined by proper decree.

I attach to this opinion an appendix, copy of the involved will, copy of the opinion of this Court and the order directing remand for further proof, and copy of the Chancellor's order returning the record to this Court. By reference it is made a part of this opinion.

## APPENDIX
## WILL

MAY 7, 1960, COPY OF LAST WILL AND TESTAMENT OF H. P. TIGRETT, FILED AS FOLLOWS:

I, H. P. Tigrett, Senior, being of sound mind and disposing memory, do make and publish this my last will and testament, hereby revoking and making void all other wills by me at any time made.

## ITEM I

I hereby give, will, bequeath and devise all of my estate, real, personal and mixed, to my son, H. P. Tigrett, Jr., and my nephew, W. B. Shibley, jointly, as trustees, with the exception of $22,000.00 in cash value of government bonds which is disposed of as hereinafter provided, for the sole use and benefit of my wife, Sara N. Tigrett, for and during her natural life, with remainder as hereinafter provided.

Said trustees are hereby given full authority to manage and control all of said property and to sell any of the personal property for the purpose of reinvestment or otherwise. All proceeds arising from the management and control of said property and the sale or sales thereof and the revenue and income from my farm and other property to be held by said trustees for the use and benefit of my said wife.

All funds coming into the hands of said trustees as such shall be deposited in bank to them as trustees for the purposes hereinafter stated.

In creating this trust it is my will and purpose for my wife to be amply provided for not only with the necessities and comforts of life, but with such additional funds as to satisfy and support her reasonable wants to the end that she may live and be provided for after my death as she is now living and being provided for.

Said trustees are to furnish all medical, hospital and all other attentions required or desired by my said wife in a full and ample manner.

In the event it shall become necessary to encroach upon the corpus of my estate for the purpose of carrying

out the provisions of this will as hereinafter provided, my said trustees are hereby given full authority to encroach thereon in the way and manner they think best in order to effectuate the end desired. This authority is given them to avoid any proceedings in court therefor and without approval of any court so to do.

## ITEM II

Said trustees shall keep a true and correct account of all their transactions and activities as such trustees which record shall be available to any and all interested beneficiaries hereunder and they shall make payments out of this trust fund as and in accordance with the reasonable wishes and desires of my said wife.

Whatever balance shall be in said trust fund upon the death of my wife shall be divided equally among my four children, to wit: H. P. Tigrett, Jr., I. B. Tigrett, Martha T. Wells and Mary T. Cease, and in the event any one of them shall not be living at the death of my said wife such share shall go to the child, children or descendants of same of such deceased child and if none then such share shall be divided equally among the aforesaid children of living.

## ITEM III

At this time, the date of the making of this will, certain of my children are indebted to me by note or otherwise and I am taking into consideration this fact in making the distribution of my property as herein provided among them and in order to carry out the intention and purposes as herein provided all indebtedness of my children to me on this the date of this will, except a note in

the principal sum of $500.00, dated February 28, 1952 and signed by Mary T. Cease, shall be cancelled and any evidence in writing thereof surrendered, but specifically providing that my son, H. P. Tigrett, Jr., shall pay into the hands of my executors herein the sum of $2500.00 and his share of my estate is charged therewith. Any indebtedness to be created after the writing of this will is excluded from its provisions.

## ITEM IV

I have on hand at the present time bonds for the purpose of purchasing real estate for the use and benefit of my daughter, Mary T. Cease. However, I may not make this purchase before my death and in such event I hereby will and direct that said trustees reduce to cash $22,000.00 of said bonds and purchase therewith farm lands at such location and in accordance with the wishes of my said daughter, Mary T. Cease, and the title of said land shall be in the said trustees, H. P. Tigrett, Jr., and W. B. Shibley, for the use and benefit of my said daughter for and during her natural life only, at which time said trust shall end and said land become the absolute property of any child, children or descendants of children of my said daughter equally, the child or children of any deceased child taking the parent's share and in the event my said daughter, Mary T. Cease, shall die leaving no child, children or descendants of same then the title to said property shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes.

220

## ITEM V

I hereby will and devise to the said trustees, H. P. Tigrett, Jr., and W. B. Shibley, 150 acres, more or less, of my farm lands situated in the Ninth Civil District of Dyer County, Tennessee, bounded on the North by Highway No. 77, on the East by B. F. Grisham lands, on the South by what is known as Ditmore gravel road, and on the West by Easley lands, to hold in trust for the use and benefit of my daughter, Martha T. Wells. Said trustees are hereby given the right and authority to sell and convey said lands if the beneficiary thereof, said Martha T. Wells, so desires but such sale shall be made only for the purpose of reinvestment in land and said trustees are empowered to execute and deliver a good and valid deed to the purchaser thereof and the proceeds therefrom shall be reinvested as aforesaid in other lands and the title thereto shall be taken to said trustees of their successors in trust to hold for the use and benefit of my said daughter for and during her natural life and at her death to her child or children or descendants of same, the child, or children of any deceased child taking the parents share and in the event my daughter, Martha T. Wells, shall die without child or children or descendants of same then the title to said property shall vest equally in my aforesaid named children living at that time and the child, children or descendant of any deceased child, if any, per stirpes. In the event my said daughter, Martha T. Wells, shall not desire to sell the aforesaid land for reinvestment as above set out then and in that event upon her death title thereto shall pass as above set out.

## ITEM VI

I will and devise to my nephew, W. B. Shibley, trustee, to hold for the use and benefit of H. P. Tigrett, Jr., that portion of my land consisting of approximately 250 acres, more or less, lying on the North side of Highway No. 77 in the Ninth Civil District of Dyer County, Tennessee, and bounded on the South by Highway No. 77, on the East by gravel road, Smith Parnell land and John Ellis place, on the North by County road and on the West by lands of Pace estate and what is known as Williams farm, now owned by H. P. Tigrett, Jr., but I exclude from this conveyance approximately two acres, the exact location thereof to be agreed upon by my son, H. P. Tigrett, Jr., and my daughter, Martha T. Wells and I hereby give and devise to H. P. Tigrett, Jr., and W. B. Shibley, trustees, said two acres in trust for the use and benefit of my said daughter, Martha T. Wells, together with a sufficient amount of timber to be selected from the said 250 acres by the said trustees to build a reasonable sized home for the use and benefit of Martha T. Wells. The trusteeship to the property shall continue during the life time of said Martha T. Wells with the provision of sale and reinvestment of proceeds as provided as to the 150 acre tract given for the use and benefit of said Martha T. Wells. Said two acres so devised is for the purpose of the said Martha T. Wells having a home on my home place and near the homestead together with a sufficient ingress and egress thereto from highway.

Said trust on said 250 acres shall continue only during the lifetime of H. P. Tigrett, Jr., and upon his death said land shall go to and become the property of his child, children or descendant of same, the child or children of any deceased child taking the parents' share and in the

event my said son, H. P. Tigrett, Jr., shall die without child, or children or descendants of same then the title to said land shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes.

At any time it is so desired on the part of the beneficiary the said W. B. Shibley, as such trustee, may sell and execute a good and valid deed to said land conveying the title thereto to the purchaser according to the wishes of the said H. P. Tigrett, Jr., but in such event, the proceeds thereof shall be reinvested in land and title taken thereto in trust aforesaid during the life time of said H. P. Tigrett, Jr., with remainder at his death to pass as above provided.

## ITEM VII

I hereby will and devise to my son, H. P. Tigrett, Jr., and W. B. Shibley, Trustees, for the use and benefit of my son, I. B. Tigrett, for and during his natural life with remainder at his death to his child, children or descendants of same, the child or children of any deceased child taking the parents share and in the event the said I. B. Tigrett dies without child, children or descendants of same then title thereto shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes, the 133 acres tract to be deeded to the trustees for the use and benefit of him, said I. B. Tigrett, by said H. P. Tigrett, Jr., (or and in lieu thereof said H. P. Tigrett, Jr., may purchase land of the value of $17,500.00 taking title thereto in the name of said trustees for the use and benefit of said I. B. Tigrett with

remainder as above set out) which together with property already given and conveyed to him, my son, I. B. Tigrett, in my judgment, makes him as equal beneficiary under this will.

The said trustees are hereby given the right and authority to sell and convey said land if the beneficiary, said I. B. Tigrett, so desires, but in such event the proceeds thereof shall be reinvested in land and title taken in said trustees or their successors in trust to be held during the lifetime of said I. B. Tigrett with remainder at his death to become the property of any child, children or descendants of same of my said son, I. B. Tigrett, the child or children of any deceased child taking the parents' share and in the event my said son, I. B. Tigrett, shall die leaving no child, children or descendants of same, then the title to said property shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes.

I hereby appoint the aforesaid H. P. Tigrett, Jr., and W. B. Shibley joint executors of this my last will and testament and direct that they shall not be required to give bond either as such trustees or executors.

In testimony whereof, I hereunto subscribe my name, this 28 day of October, 1952.

/s/ H. P. Tigrett, Sr.

The aforesaid instrument was signed by the said H. P. Tigrett, Sr., who signified and acknowledged to us, the undersigned attesting witnesses thereof, that the aforesaid instrument is his will and he signed same in the presence of us, the undersigned, who, at his request and in his presence and in the presence of each other, the

said date above written have set our hands as subscribing witnesses.

/s/ Estelle Brown
/s/ John M. Drane

---

H. Parks TIGRETT, Jr. and W. B. Shibley, Executors and Trustees Under the Will of H. Parks Tigrett, Sr., and individually,

Appellants

V.

I. B. TIGRETT,

Appellee

Court of Appeals of Tennessee,
Western Section.

---

## ORDER OF REMAND

In this cause it appearing to the Court that the record should be immediately returned to the Chancery Court of Dyer County for completion as provided in the opinion, which is made a part of this order as fully as if copied herein, and attached hereto, does become a part hereof;

Therefore, the record will be supplied in accord with the matters set forth in the opinion and this minute entry. The record, when so supplemented, shall be returned to this Court within 60 days from the day it is

received by its return to the Chancery Court of Dyer County, Tennessee, for all this and further and final consideration by this Court. Entered this October 21, 1966.

---

H. Parks TIGRETT, Jr., and W. B. Shibley, Executors and Trustees Under the Will of H. Parks Tigrett, Sr., and Individually,

Appellants

V.

I. B. TIGRETT,

Appellee

Court of Appeals of Tennessee,

Western Section.

Oct. 21, 1966.

From the Chancery Court of Dyer County; Honorable John T. Gray, Chancellor. Without final disposition in this court the record in this cause is remanded to the Chancery Court of Dyer County with direction to supplement the record in accord with the opinion and direction of this court.

Opinion filed.

Robert P. Adams, Trenton, Tenn., and Richard Holmes, Trenton, Tenn., for appellants.

Palmer and Walker, Dyersburg, Tenn., for appellee.

AVERY, J.

CARNEY, J.

J. C. Nowell, sitting by agreement as Special Judge in place of Judge L. D. BEJACH.

This is a will construction cause arising in the Chancery Court of Dyer County, Tennessee, seeking construction of the will of H. P. Tigrett, Sr., in its entirety and every provision thereof, whose will was executed in 1952 and who died in 1958.

There is no contest of the will and there is no question made with respect to its legal execution. The wife of testator survived him, together with four children, two sons and two daughters, each and all being sui juris at the time the will was executed, probated and at the present, all are living.

A copy of said will was filed as Exhibit "A" to the original bill. From the contents of the original will it was obvious that all necessary parties were not before the Court and on July 28, 1960 an order was made setting out the names of the children and grandchildren of the testator, directing process to issue as to all of the apparent necessary parties, making publication for non-residents etc. This order embodied an amendment to the original bill and shows it was received for entry "9/26/60".

Process was served on the parties in accord with the order and on November 23, 1960, answer and cross-bill was filed by H. P. Tigrett, Jr. and W. B. Shibley, executors and joint trustees, and H. P. Tigrett, Jr. individually.

On June 24, 1961, Mrs. Martha T. Wells and Mrs. Mary T. Cease filed an answer to the original bill.

As exhibits to these pleadings a copy of the original will is attached; copy of a deed to a house and lot in the city of Newbern; copy of alleged contract entered into sets out an agreement that appears to have been signed by the four children and the widow of deceased, relating to the $22,000 in bonds of the testator, the required investment by the trustees in land for Mrs. Mary T. Cease; notice which is alleged to have been given by H. P. Tigrett, Jr. to I. B. Tigrett; alleged notice from I. B. Tigrett to H. P. Tigrett, Jr. relating to the 133 acres of land mentioned in the will, the $2,500 mentioned in the will and the $17,500 mentioned in the will.

Testator owned considerable properties, consisting of real estate farm lands, U.S. Government bonds and a small amount of municipal property at the time he made the will, all of which he owned at the time of his death, except one acre of farm land and the municipal property.

I. B. Tigrett filed the first suit which generally involved his right as a devisee and that of his brother, H. P. Tigrett, Jr. as a devisee, and joint executor with W. B. Shibley, and as joint trustees.

After the first suit was filed, the bill was answered and a cross-bill filed by H. P. Tigrett, Jr. and W. B. Shibley as joint executors and joint trustees and by H. B. Tigrett, Jr. as an individual. This answer and cross-bill states that:

"These defendants deny that complainant is entitled to any of the relief he seeks in his original bill * * *

"For further answer, these defendants aver that since complainant's original bill seeks a construction of the will insofar as it applies to him and the defendant

H. P. Tigrett, Jr., and since by consent the others whose rights and interests are affected have been made parties, which these defendants believe necessary in any construction, these defendants file this answer as such and also in the nature of a cross-bill so that the entire will may be construed and the full rights of all the parties interested declared and decreed."

It then enumerates nine matters to be determined by the Court. Thereafter, on July 5, 1961, guardian ad litems were appointed for the unknown and unborn heirs of the respective children of the testator and for the minor grandchildren of testator. I. B. Tigrett filed an individual answer to the cross-bill. Answers of minors, guardians therefor and the guardians for the unknown and unborn children were duly filed. These answers by the guardians were simply of a formal nature.

With the original bill, the answers thereto and the cross-bill, their answers thereto, the Court was requested in the respective prayers, for a complete construction of the entire will and of the rights, duties and activities required of the trustees.

All of the proof is by depositions.

The will of testator was prepared by the Honorable John M. Drane, a distinguished lawyer and member of the Dyer County Bar. In accord with the respective prayers in the pleadings, as the proof was all in, the Chancellor entered his decree. This decree will be further referred to hereinafter, for an appeal was duly prayed, granted and perfected to this Court, as will be hereinafter more specifically noted.

For the purpose of preparing this opinion, we have separated it under separate headings and have quoted the provision of the will relating to these specific titles:

## 1—WHAT PROPERTY WAS DEVISED FOR SUPPORT OF TESTATOR'S SURVIVING WIFE?

"I hereby give, will, bequeath and devise all of my estate, real, personal and mixed, to my son, H. P. Tigrett, Jr., and my nephew, W. B. Shibley, jointly, as trustees, with the exception of $22,000.00 in cash value of government bonds which is disposed of as hereinafter provided, for the sole use and benefit of my wife, Sara N. Tigrett, for and during her natural life, with remainder as hereinafter provided."

## 2—AUTHORITY AND DUTY OF TRUSTEE AS RELATES TO TESTATOR'S SURVIVING WIFE:

"Said trustees are hereby given full authority to manage and control all of said property and to sell any of the personal property for the purpose of reinvestment or otherwise.

"All proceeds arising from the management and control of said property and the sale or sales thereof and the revenue and income from my farm and other property to be held by said trustees for the use and benefit of my said wife.

"All funds coming into the hands of said trustees as such shall be deposited in bank to them as trustees for the purposes hereinafter stated.

"In creating this trust it is my will and purpose for my wife to be amply provided for not only with the necessities and comforts of life, but with such addi-

tional funds as to satisfy and support her reasonable wants to the end that she may live and be provided for after my death as she is now living and being provided for.

"Said trustees are to furnish all medical, hospital and all other attentions required or desired by my said wife in a full and ample manner.

"In the event it shall become necessary to encroach upon the corpus of my estate for the purpose of carrying out the provisions of this will as hereinafter provided, my said trustees are hereby given full authority to encroach thereon in the way and manner they think best in order to effectuate the end desired. This authority is given them to avoid any proceedings in court therefor and without approval of any court so to do."

## 3—DUTY OF TRUSTEES AS TO MANAGEMENT, CONTROL AND ACTING THEREFOR OF THE INCOME FROM THE TRUST PROPERTIES:

"Said trustees shall keep a true and correct account of all their transactions and activities as such trustees which record shall be available to any and all interested beneficiaries hereunder and they shall make payments out of this trust fund as and in accordance with the reasonable wishes and desires of my said wife."

## 4—DISBURSEMENT OF BALANCE IN TRUST FUND AT DEATH OF WIFE:

"Whatever balance shall be in said trust fund upon the death of my wife shall be divided equally among

my four children, to wit: H. P. Tigrett, Jr., I. B. Tigrett, Martha T. Wells and Mary T. Cease, and in the event any one of them shall not be living at the death of my said wife such share shall be divided equally among the aforesaid children of living.''

5—FORGIVENESS OF DEBTS OWING BY CHILDREN AT TIME WILL MADE AND PROVIDING FOR PAYMENT TO THE TRUST FUND IN CASH BY H. P. TIGRETT, JR.:

''At this time, the date of the making of this will, certain of my children are indebted to me by note or otherwise and I am taking into consideration this fact in making the distribution of my property as herein provided among them and in order to carry out the intention and purposes as herein provided all indebtedness of my children to me on this the date of this will, except a note in the principal sum of $500.00, dated February 28, 1952 and signed by Mary T. Cease, shall be cancelled and any evidence in writing thereof surrendered, but specifically providing that my son, H. P. Tigrett, Jr., shall pay into the hands of my executors herein the sum of $2500.00 and his share of my estate is charged therewith. Any indebtedness to be created after the writing of this will is excluded from its provisions.''

6—DISPOSITION OF $22,000 SET UP FOR MRS. MARY T. CEASE:

''I have on hand at the present time bonds for the purpose of purchasing real estate for the use and benefit of my daughter, Mary T. Cease. However, I may not make this purchase before my death and in

such event I hereby will and direct that said trustees reduce to cash $22,000.00 of said bonds and purchase therewith farm lands at such location and in accordance with the wishes of my said daughter, Mary T. Cease, and the title of said land shall be in the said trustees, H. P. Tigrett, Jr., and W. B. Shibley, for the use and benefit of my said daughter for and during her natural life only, at which time said trust shall end and said land become the absolute property of any child, children or descendants of children of my said daughter equally, the child or children of any deceased child taking the parent's share and in the event my said daughter, Mary T. Cease, shall die leaving no child, children or descendants of same then the title to said property shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes.''

7—DEVISED BY WILL TO TESTATOR'S DAUGHTER, MRS. MARTHA T. WELLS:

''I hereby will and devise to the said trustee, H. P. Tigrett Jr., and W. B. Shibley, 150 acres, more or less, of my farm lands situated in the Ninth Civil District of Dyer County, Tennessee, bounded on the North by Highway No. 77, on the East by B. F. Grisham lands, on the South by what is known as Ditmore gravel road, and on the West by Easley lands, to hold in trust for the use and benefit of my daughter, Martha T. Wells. Said trustees are hereby given the right and authority to sell and convey said lands if the beneficiary thereof, said Martha T. Wells, so desires but such sale shall be made only for the

purpose of reinvestment in land and said trustees
are empowered to execute and deliver a good and
valid deed to the purchaser thereof and the proceeds
therefrom shall be reinvested as aforesaid in other
lands and the title thereto shall be taken to said
trustees or their successors in trust to hold for the
use and benefit of my said daughter for and during
her natural life and at her death to her child or chil-
dren or descendants of same, the child, or children of
any deceased child taking the parents share and in
the event my daughter, Martha T. Wells, shall die
without child or children or descendants of same then
the title to said property shall vest equally in my
aforesaid named children living at that time and the
child, children or descendant of any deceased child,
if any, per stirpes. In the event my said daughter,
Martha T. Wells, shall not desire to sell the aforesaid
land for reinvestment as above set out then and in
that event upon her death title thereto shall pass as
above set out.''

8—DEVISED TO W. B. SHIBLEY INDIVIDUALLY
AS TRUSTEE FOR TESTATOR'S SON, H. P.
TIGRETT, JR.:

''I will and devise to my nephew W. B. Shibley,
trustee, to hold for the use and benefit of H. P.
Trigett, Jr., that portion of my land consisting of
approximately 250 acres, more or less, lying on the
North side of Highway No. 77 in the Ninth Civil
District of Dyer County, Tennessee, and bounded on
the South by Highway No. 77, on the East by gravel
road, Smith Parnell land and John Ellis place, on
the North by County road and on the West by lands

of Pace estate and what is known as Williams farm, now owned by H. P. Tigrett, Jr., but I exclude from this conveyance approximately two acres, the exact location thereof to be agreed upon by my son H. P. Tigrett, Jr., and my daughter, Martha T. Wells and I hereby give and devise to H. P. Tigrett, Jr., and W. B. Shibley, trustees, said two acres in trust for the use and benefit of my said daughter, Martha T. Wells, together with a sufficient amount of timber to be selected from the said 250 acres by the said trustees to build a reasonable sized home for the use and benefit of Martha T. Wells. The trusteeship to the property shall continue during the life time of said Martha T. Wells with the provision of sale and re-investment of proceeds as provided as to the 150 acre tract given for the use and benefit of said Martha T. Wells. Said two acres so devised is for the purpose of the said Martha T. Wells having a home on my home place and near the homestead together with a sufficient ingress and egress thereto from highway.

"Said trust and said 250 acres shall continue only during the lifetime of H. P. Tigrett, Jr., and upon his death said land shall go to and become the property of his child, cildren or descendant of same, the child, or children of any deceased child taking the parents' share and in the event my said son, H. P. Tigrett Jr., shall die without child, or children or descendants of same then the title to said land shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes.

"At any time it is so desired on the part of the beneficiary the said W. B. Shibley, as such trustee, may

sell and execute a good and valid deed to said land conveying the title thereto to the purchaser according to the wishes of the said H. P. Tigrett, Jr., but in such event, the proceeds thereof shall be reinvested in land and title taken thereto in trust aforesaid during the life time of said H. P. Tigrett, Jr., with remainder at his death to pass as above provided.''

## 9—DEVISED TO H. P. TIGRETT, JR., AND W. B. SHIBLEY, TRUSTEES FOR USE AND BENEFIT OF TESTATOR'S SON, I. B. TIGRETT:

''I hereby will and devise to my son, H. P. Tigrett, Jr., and W. B. Shibley, Trustees, for the use and benefit of my son, I. B. Tigrett, for and during his natural life with remainder at his death to his child, children or descendants of same, the child or children of any deceased child taking the parents share and in the event the said I. B. Tigrett dies without child, children or descendants of same then title thereto shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes, the 133 acres tract to be deeded to the trustees for the use and benefit of him, said I. B. Tigrett, by said H. P. Tigrett, Jr., (or and in lieu thereof said H. P. Tigrett, Jr., may purchase land of the value of $17,500.00 taking title thereto in the name of said trustees for the use and benefit of said I. B. Tigrett, with remainder as above set out) which together with property already given and conveyed to him, my son, I. B. Tigrett, in my judgment, makes him an equal beneficiary under this will.

"The said trustees are hereby given the right and authority to sell and convey said land if the beneficiary, said I. B. Tigrett, so desires, but in such event the proceeds thereof shall be reinvested in land and title taken in said trustees or their successors in trust to be held during the lifetime of said I. B. Tigrett with remainder at his death to become the property of any child, children or descendants of same of my said son, I. B. Tigrett, the child or children of any deceased child taking the parents' share and in the event my said son, I. B. Tigrett, shall die leaving no child, children or descendants of same, then the title to said property shall vest equally in my aforesaid named children living at that time and the child, children or descendants of any deceased child, if any, per stirpes."

"I hereby appoint the aforesaid H. P. Tigrett, Jr., and W. B. Shibley joint executors of this my last will and testament and direct that they shall not be required to give bond either as such trustees or executors."

The nine matters sought to be determined by the prayer and requests contained in the cross-bill and answers are:

"1. Whether the inheritance taxes paid and to be paid by the executors are chargeable to the respective present children, beneficiaries of the will, and if so, an order and decree for the respective payments to be entered;

"2. When shall Mrs. Martha T. Wells select her 2 acres of land for building purposes, and whether she may do so within a reasonable time after Mrs. Tigrett's death, when the remaining assets of H. P. Tigrett's Sr.

and trust accumulations are definitely known; and which these defendants aver was the purpose and interest of H. P. Tigrett, Sr.;

"3. When should Mrs. Martha T. Wells select her timber for building purposes, as provided for in the will;

"4. Should the wants, needs and requirements of Mrs. Sara N. Tigrett, widow, exceed the trust income and remaining personal property, may the trustees sell off land and/or timber, or incumber the lands by trust deeds for those purposes, and if so, in what proportions;

"5. May lands valued at $17,500.00 be purchased by H. P. Tigrett, Jr., as provided in the will, for I. B. Tigrett, whether he selects it and its location, from lands available for purchase, which H. P. Tigrett, Jr. avers he has the individual right to do, upon the continued refusal of I. B. Tigrett;

"6. Should the tract of land desired to be purchased exceed $17,500.00 in value, may the difference be paid from the final distribution of the personal estate and trust accumulations from the shares of the respective beneficiaries remaining at the death of Mrs. Sara N. Tigrett, widow; and should the land purchased approximate the $17,500.00 may the difference be held in trust as though it was land and as provided for in the will for the trusts created?

"7. How and from what funds may the trustees' attorney fees in this suit be paid, so that each of the four children and their estates contribute thereto;

"8. Do the defendants, as trustees, have the right and power to carry out the agreement made with Mrs. Mary T. Cease;

"9. All such other, further, general and special relief, as they are entitled to under the facts and will of H. P. Tigrett, Sr."

Copy of deed of H. P. Tigrett, Sr., et ux. to H. P. Tigrett, and W. B. Shibley, trustees for I. B. Tigrett, is made an exhibit to the cross-bill.

An explanation of how the $22,000 in bonds had been handled in accord with the undated signed agreement by H. P. Tigrett, Jr., Mary T. Cease, Martha T. Wells, Sara N. Tigrett and I. B. Tigrett is copied into the cross-bill and answer.

In the preparation of this opinion the record reveals that there had been filed a petition in the Common Law and Chancery Court of Dyer County, Tennessee, which court has concurrent jurisdiction in matters of this character with the Chancery Court, and that some decree or order was entered in that Court construing or dealing with certain portions of the involved will, particularly relating to the devise to Mrs. Cease and the aforesaid agreement.

It also reveals that after the Chancellor filed his original opinion, a petition for rehearing was filed and that thereafter his original opinion was expanded to some extent, and the petition to rehear denied in every respect.

It further appears that the Chancellor did not dispose of the interpretation of the activities of the trustees, by authority under the will, an error is assigned in that regard.

Error is also assigned with respect to the action of the Chancellor dealing with the bequest relating to the $22,000 in bonds and disposition thereof.

It is also revealed that the record does not show the action of the Common Law and Chancery Court of Dyer County in connection with the disposition of that $22,000, which could have a definite bearing on the decree to be entered in this Court. It is also revealed that the petition to rehear is nowhere carried into this record.

Therefore, it could not be determined by the Chancellor what effect the decree of said Common Law and Chancery Court of Dyer County might have upon the proper opinion and decree to be rendered by him, either under the original answer and cross-bill or the answers to the cross-bill.

It also could not be determined whether the Chancellor had erred in denying the petition to rehear, since the petition did not appear in the record.

It is also revealed that the co-executor and co-trustee, W. B. Shibley, did not testify with respect to any of the issues involved nor did Mr. Drane, who wrote the will for Mr. Tigrett, Sr.

It also does not appear in this record what nor how the funds which were to be deposited in the bank in the name of the trustees were obtained nor how it was used or expended. In other words, there is no report of the trustees in this record, therefore, it is impossible to comply with the parts of the prayers of the cross-bill which requests the Chancellor to determine the duties of the trustees with regard to the balance of the fund, after the death of the widow of the testator, can be

legally expended or disbursed or were obtained in accord with the duties and trust vested in them as such trustees.

It also appears to this Court that this Court can not properly dispose of the assignments of error so as to completely answer them in a proper and legal manner with the record in the condition that we find it. It is, therefore, ordered that this record be remanded to the Chancery Court of Dyer County with instructions as follows:

1—The records of the Common Law and Chancery Court of Dyer County relating to the action of the parties, trustees and executors included, embraced in the administration of the estate of H. P. Tigrett, Sr. or any part thereof, including the petitions, answers, testimony, if preserved, and the decree or decrees entered therein, be made a part of the record hereby remanded.

2—The petition to rehear filed in this cause in the Chancery Court of Dyer County, be embraced within the remanded record.

3—Any and every report of the executors and/or trustees, together with their accounting of the funds collected in accord with their duties and trusts vested in them as such.

4—It further appearing, without explanation, that the co-executor and co-trustee, W. B. Shibley, did not testify in the trial of this cause in the Chancery Court, he will be permitted to testify only on the remand in connection with the particular matters required to be supplemented to the record as it stood when heretofore certified and filed in this Court on appeal.

5—That all matters required to be supplemented in this record, be done under the direction of the Chancellor in said Court and the entire record again submitted to him for such opinion, orders and decrees as he may care to further make, together with any additional exceptions and objections to such opinion, orders and decrees as the parties care to make.

6—That on compliance with this order of remand the entire record be re-certified to this Court for further disposition as required by law, where this cause will be then further heard de novo in this Court.

It is further ordered that appellants from such orders or opinion of the Chancellor as may be finally made in this cause on the remand, may file such additional assignments of error as they consider necessary to the action of the Chancellor hereunder, within 10 days after notice that the record is re-filed in this Court and replies made thereto by the appellees within the time allowed under the rules of this Court and the law, as if it were the first time of filing this record in this Court.

It further appears to this Court that the cause was pending in the Court below from the date of the original petition therein on May 7, 1960, and that all the children, executors and trustees are now living, and that in view of the uncertainty of life and the personal responsibilities, duties and actions of the trustees and executors should be carried out as soon as practicable and the record will be remanded to this Court as herein directed within 60 days after the record with this order, has been received in the Chancery Court of Dyer County.

This action is taken in accord with T.C.A. secs. 27-327 and 27-329 and the decisions thereunder.

In this cause it appears that Judge L. D. Bejach, a regular judge of the Court of Appeals in this Section, on account of an attack of bronchitis and on advise of doctors, was unable to participate in the hearing of this cause. Thereupon, all parties thereto and attorneys, agreed that the Honorable John C. Nowell, an attorney at the Trenton, Tennessee, Bar, might sit with Judges Avery and Carney, two of the regular Judges for the Western Section of the Court of Appeals of Tennessee, in the hearing of this cause, whereupon, this cause was so heard in this Court, counsel for all parties being present and participating in the argument in the hearing.

AVERY, J.

CARNEY, J., and J. C. NOWELL, Special Judge, concur.

| H. P. TIGRETT, Jr. et al. | In the Chancery |
| Appellants | Court of Dyer |
| V. | |
| I. B. TIGRETT, | County, Tennessee |
| Appellee | No. 6747 |

## CERTIFICATE OF CHANCELLOR

This case is now before the court upon an order of remand of the Court of Appeals in Jackson, Tennessee, sending the case back to have the record completed as to items not included in the original record as sent to the court of appeals, such order of remand specifying to what extent the present transcript in the Court of Appeals should be supplemented so as to include the additional evidence set out in the order of remand. This completion of the transcript was to be made under the direction of the Chancellor of the Chancery Division.

A Bill of Exceptions was filed embracing the matter produced under the remand and asking that the court

consider this matter on the motion to rehear. The court has re-read its original opinion both including the opinion on the petition to rehear matter before the case was appealed to the Court of Appeals and has also very carefully read the Bill of Exceptions on the remand. After carefully considering all the matters including all the additional evidence contained in the Bill of Exceptions prepared under the order of remand the court is of the opinion that no new evidence was produced that would change the findings of the court under its two former opinions and the request of the motion to rehear under the remand is denied and the opinion of the court both in the original opinion and in the opinion on the motion to rehear heard before the appeal are both re-affirmed and the motion filed under the remand is as above stated here and now denied.

The court hereby certifies that the Bill of Exceptions filed herein includes all the evidence called for under the remand that was available.

*John D. Hu*
CHANCELLOR