IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs August 20, 2002 Session


**CHARLES SMITH, EXECUTOR OF THE ESTATE OF ETHEL ROGERS
SMITH, DECEASED v. JERRY SMITH**

**Appeal from the Chancery Court for Hamblen County
No. 2000-200     Thomas R. Frierson, II, Chancellor**

**FILED OCTOBER 30, 2002**

**No. E2001-03132-COA-R3-CV**

---

Ethel Rogers Smith ("Ethel")[1] executed a will in 1991 that provided that her property would go to her husband, if he survived her, and if not, would be split equally between her two sons, Charles Smith ("Charles") and Jerry Smith ("Jerry").  Ethel's husband predeceased her.  Ethel executed a Durable Power of Attorney with Springing Clause in 1994, naming Jerry as her attorney-in-fact. Although the power of attorney never became operative under its terms, Ethel and Jerry treated it as though it were operative and Jerry signed numerous documents as his mother's attorney-in-fact. Ethel died in February of 2000.  The majority of Ethel's money is in a SunTrust Securities account held as joint tenants with right of survivorship with Jerry.  The Trial Court found that no confidential relationship existed between Jerry and Ethel and that Jerry did not exercise undue influence over his mother.  Charles, as executor of his mother's estate, appeals, among other things, the Trial Court's findings of no confidential relationship and no undue influence.  We affirm in part, reverse in part, and remand.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed, in part, and Reversed, in part; Case Remanded**


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P. J., and HERSCHEL P. FRANKS, J., joined.

Christopher P. Capps, Morristown, Tennessee, for the Appellant, Charles Smith, Executor of the Estate of Ethel Rogers Smith.

Douglas R. Beier, Morristown, Tennessee, for the Appellee, Jerry Smith.

---

[1]To minimize confusion, we will refer to the parties by their first names rather than as Ms. or Mr. Smith.

## OPINION

## Background

This appeal revolves around the central question of whether or not a son exerted undue influence over his mother such that the son was able to divert his mother's assets to himself to avoid distribution of those assets under his mother's will. Ethel Rogers Smith, the decedent in this case, executed a will in 1991 that provided for her property to go to her husband, if he survived her, and if not, to be split equally between her two sons, Charles Smith and Jerry Smith. Ethel executed a Durable Power of Attorney with Springing Clause in 1994, naming Jerry as her attorney-in-fact. The power of attorney contains a paragraph that stipulates that the power becomes operative upon a doctor's certification of disability or incapacity of the principal. The record contains no proof of any such doctor's certification of disability or incapacity. Ethel's husband predeceased her.

Several years after her husband's death, Ethel moved from her house to the Grand Court of Morristown, a rental retirement community. Evidence at trial indicated Jerry visited Ethel frequently both at Grand Court and, later, at a nursing home, and at the hospital after Ethel was admitted to the hospital. Jerry assisted Ethel with routine tasks and transportation. Charles also visited Ethel, but less often.

After moving to Grand Court, Ethel decided to sell her house. Jerry testified he signed the documents in connection with the sale of the house, at his mother's request, as her attorney-in-fact. The sale proceeds, approximately $90,000[2], were deposited in a time certificate of deposit with Union Planters Bank under an account name of "Ethel Smith or Jerry G. Smith." Jerry also executed the documentation in connection with this certificate of deposit as attorney-in-fact for his mother.

When the certificate of deposit at Union Planters Bank matured in 1999, Ethel and Jerry met with Mr. Brice of SunTrust Securities, Inc. to establish a new account utilizing the money from the Union Planters CD. The SunTrust account was established as a joint tenancy with right of survivorship in the names of "Ethel K. Smith" and "Jerry G. Smith." Some additional money of Ethel's was added to the account resulting in a total of approximately $210,000. This $210,000 constitutes the majority of the assets owned by Ethel at her death.

Ethel's power of attorney never became operative, according to its terms, because she never was certified by her physician as disabled or incapacitated. However, Ethel and Jerry both treated the power of attorney as effective. The evidence presented at trial was uncontroverted that although Ethel had numerous health problems, she never lost her mental acuity. Jerry, apparently with Ethel's knowledge, used the power of attorney to sign a number of documents for Ethel including, but not limited to, the documents involved in the sale of Ethel's house, an application with

---

[2]For the sake of simplicity, we use round numbers in this Opinion as much as possible.

the Department of Human Services, and the documents to set up the certificate of deposit at Union Planters Bank. [3]

Jerry testified he never read the entire power of attorney and did not understand what power it actually gave to him. He testified that during his involvement with the sale of his mother's house, he received an instruction from the title company to take the power of attorney to the court house and have it registered. The title company then allowed Jerry to sign the documents as Ethel's attorney-in-fact.

Testimony showed Jerry filled out an application for Medicaid for his mother in which he listed her only income as Social Security and her only resource as a checking account that contained less than $5,000. He did not disclose in the application the SunTrust account he and his mother held as joint tenants. He testified that since his name was on the account, he "didn't think it would count."

Testimony at trial showed Ethel had a good relationship with her son, Jerry, but her relationship with her other son, Charles, was somewhat strained. The evidence indicated there had been a period of time Charles and his wife refused to allow their children to visit with Ethel, the children's grandmother. Testimony also was introduced that showed that Ethel was angry with Charles for his refusal to attend his grandmother's funeral. Additionally, there was testimony that due to a family rift, Charles's wife did not visit Ethel at any time during the 30 years prior to Ethel's death. Jerry testified his mother had made him promise that Charles and his wife wouldn't get anything from Ethel's estate upon her death. Ethel died on February 3, 2000.

At trial, plaintiff called Reverend Griffin, the retired pastor of Ethel's church, to testify. An objection was raised to the disclosure of confidences made in the course of the pastor/parishioner relationship. The Trial Court read a portion of Tenn. Code Ann. § 24-1-206 to allow Reverend Griffin to determine if his answers fell within the parameters of such confidences. Reverend Griffin did testify that Ethel loved both of her sons and that she was a frugal lady, but invoked the clergy/penitent privilege regarding other discussions he and Ethel had.

## Discussion

Appellant raises several issues on appeal: (1) did the Trial Court err in finding that no confidential relationship existed between Jerry Smith and his mother, Ethel Rogers Smith; (2) did the Trial Court err in failing to find that the account at SunTrust Securities was acquired by the undue influence of Jerry Smith over his mother; (3) did the Trial Court err in ignoring the alleged fraud by Jerry Smith in regard to the Medicaid application; (4) did the Trial Court err in its

---

[3]Jerry also signed "Do Not Resuscitate" orders for his mother when she was in the hospital, but he testified that he did not understand the documents and thought they meant that his mother would not be put on a machine for life support. Testimony at trial also revealed that Jerry's wife, Edith Smith, also had signed checks on Ethel's checking account.

instruction to Appellant's witness regarding the clergy/penitent confidentiality privilege; and (5) did the Trial Court err in finding that the requirements for creating a joint tenancy with right of survivorship had been met.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether or not the Trial Court erred in finding that no confidential relationship existed between Jerry Smith and his mother. "The question of whether a confidential relationship existed is a question of fact," *Brantley v. Mayo*, No. 02A01-9710-GS-00261, 1998 Tenn. App. LEXIS 871, at *8 (Tenn. Ct. App. Dec. 28, 1998), *no appl. perm. appeal filed*, and this Court gives great deference to the Trial Court's findings of fact. However, we hold that the evidence does preponderate against the Trial Court's finding that no confidential relationship existed and, therefore, we reverse on this issue.

It is well settled in Tennessee that "where there is a 'confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, a presumption of undue influence arises, that may be rebutted only by clear and convincing evidence of the fairness of the transaction.'" *E.g., Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002) (quoting *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995)). A confidential relationship is one which gives the dominant party dominion and control over the weaker party. *Id.*

> The burden of proof regarding a confidential relationship rests upon the party claiming the existence of such a relationship. Once a confidential relationship has been shown and a presumption of undue influence arises, the burden shifts to the dominant party to rebut the presumption by proving the fairness of the transaction by clear and convincing evidence.

*Id.* (citations omitted).

The relationship between a parent and an adult child does not by itself create a confidential relationship. *Harper v. Watkins*, 670 S.W.2d 611, 622 (Tenn. Ct. App. 1983). However, the rule changes when the parent grants a power of attorney to the adult child, making the child the dominant party in the relationship. Our Supreme Court has held "that a confidential relationship arises as a matter of law when an unrestricted power of attorney is granted to the dominant party." *Childress*, 74 S.W.3d at 328-29. "[A] power of attorney that has not yet taken effect, and which may be altered or revoked at any time by the person granting it cannot be considered to be unrestricted." *McKinley v. Holt*, No. 03A01-9807-PB-00220, 1999 Tenn. App. LEXIS 247, at *11 (Tenn. Ct. App. Apr. 15, 1999), *appl. perm. appeal denied Sept. 13, 1999*, (quoting *Garton v. Norman*, No. 01-A-01-9511-CH-00514, 1996 Tenn. App. LEXIS 365, at *12 (Tenn. Ct. App. June 14, 1996), *no appl. perm. appeal filed*).

We hold that the Trial Court erred in finding that no confidential relationship existed between Jerry Smith and his mother. Although the power of attorney that Ethel granted to Jerry never became effective, under its terms, because Ethel never was certified by her physician as disabled or incapacitated, Ethel and Jerry acted as though the power of attorney was in effect and treated it as fully operative. Jerry signed several documents as Ethel's attorney-in-fact and testified that he did so at his mother's request. The evidence shows that Jerry and Ethel treated the power of attorney as though it were unrestricted. Therefore, we hold that a confidential relationship did exist between Jerry Smith and Ethel Rogers Smith.

We next turn to whether or not the Trial Court erred in failing to find that the account at SunTrust Securities was acquired by the undue influence of Jerry Smith over his mother. Our now having held that the Trial Court erred in not finding that a confidential relationship existed between Jerry Smith and Ethel Rogers Smith changes the posture of this case as to the parties' burdens. The record shows that Jerry, as the dominant party in the confidential relationship, received the benefit of being the joint tenant with right of survivorship on the SunTrust account which was opened with the money received from the sale of Ethel's house. Thus, a presumption of undue influence arises in connection with this transaction. In light of our holding that a confidential relationship did exist, we remand this case to the Trial Court to determine whether or not Jerry Smith carried his burden of rebutting this presumption by clear and convincing evidence of the fairness of the transaction.

We next consider whether or not the Trial Court ignored the allegations of fraud by Jerry Smith in regard to the Medicaid application filed on behalf of his mother, and if so, was that reversible error. "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings." *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999) (quoting *Collins v. Howmet Corp.*, 970 S.W.2d 941, 943 (Tenn.1998)). Jerry Smith gave an explanation at trial for his actions with regard to the Medicaid application. The Trial Court, after seeing and hearing Jerry Smith testify, arrived at its determination of his credibility and the weight to be given that testimony concerning his explanation for his actions. As the Trial Court is in the best position to judge the credibility of the witnesses, we do not find that the evidence preponderates against the Trial Court's findings related to this issue. We hold this issue to be without merit.

As far as Appellant's issue regarding whether or not the Trial Court erred in its instruction to Appellant's witness regarding the clergy/penitent confidentiality privilege, we note that no offer of proof was made regarding the substance of the excluded evidence. Rule 103 of the Tennessee Rules of Evidence provides that:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [i]n case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context....

Tenn. R. Evid. 103 (a). Appellant admits no offer of proof was made, but argues that the substance of the excluded evidence was apparent from the context. After a thorough review of the record, we find that the substance of the excluded evidence and the specific evidentiary basis supporting admission are not apparent from the context. Since no offer of proof was made and the substance of the excluded evidence is not apparent from the record, we hold there is no reversible error regarding this issue.

Finally, we address whether or not the Trial Court erred in finding that the requirements for creating a joint tenancy with right of survivorship had been met. We begin by noting that this issue was not raised in the pleadings. Appellant, however, claims this issue was tried by implied consent.

This Court has stated that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *Childs v. Roane County Bd. of Educ.*, 929 S.W.2d 364, 366 n.1 (Tenn. Ct. App. 1996). However, we also have held that "[p]resentation of evidence that is relevant to both a pled issue and a non-pled issue does not establish trial of the non-pled issue by implied consent." *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 649 (Tenn. Ct. App. 1999).

We find nothing in the record that establishes that this issue was tried by implied consent. The evidence presented in regard to this issue was relevant, and necessary, to issues that were pled. Therefore, we hold that this issue was not tried by implied consent and may not be raised for the first time on appeal.

## **Conclusion**

We reverse the portion of the Trial Court's judgment that found no confidential relationship existed between Jerry Smith and his mother, Ethel Rogers Smith. This cause is remanded to the Trial Court for a determination of whether or not Jerry Smith met his burden of rebutting the presumption of undue influence by clear and convincing evidence of the fairness of the transactions creating the SunTrust account, and for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. We affirm the remainder of the Trial Court's judgment. Costs on appeal are assessed against the Appellee, Jerry Smith.

 

 

_____
D. MICHAEL SWINEY, JUDGE