# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 21, 2011 Session

## THOMAS L. GRIMES, ET AL. v. HELEN CORNELL

**Appeal from the Circuit Court for Davidson County**
**No. 07P-1682     David Randall Kennedy, Judge**

_____

**No. M2010-01461-COA-R3-CV - Filed May 23, 2011**

_____

This appeal involves a will contest in which the trial court found that a will executed in 2005 was the product of undue influence and, as a consequence, admitted a will executed by the testator in 2004 to probate. The proponent of the 2005 Will appeals the finding of undue influence as well as the dismissal of her claim for intentional infliction of emotional distress and award of attorney's fees to Plaintiffs to be paid from the estate. We affirm the trial court in all respects.

### Tenn. Rule App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Helen Cornell, Nashville, Tennessee, Pro Se.

John Lester Whitfield and Michael Mario Castellarin, Nashville, Tennessee, for the appellees, Thomas L. Grimes, Jeff Grimes, and Michael Grimes.

### OPINION

## I.     Facts and Procedural History

Ruth Nelson ("Mrs. Nelson") died on October 20, 2007 at ninety-nine years of age; she was survived by her daughter, Helen Cornell ("Defendant"), and her three grandsons, Thomas Grimes, Jeff Grimes, and Michael Grimes ("Plaintiffs").[1] On November 1, 2007, Defendant filed a Petition to Probate a will executed on January 20, 2005 ("2005 Will") as

_____

[1] Plaintiffs are the sons of Mrs. Nelson's other daughter, the late Dr. Mary Grimes, who died on May 2, 2005.

the last will and testament of Mrs. Nelson. Plaintiffs filed a response to the petition in which they denied the validity of the 2005 Will; specifically, they alleged that the 2005 Will was "obtained by undue influence and/or that the decedent was not competent to execute the [2005 Will]." Plaintiffs also filed a Complaint to Contest the 2005 Will and asked the court to declare a will executed on February 19, 2004 ("2004 Will") as Mrs. Nelson's last will and testament. Defendant filed a counterclaim seeking to uphold the 2005 Will and seeking damages against Thomas Grimes for conversion, intentional infliction of emotional distress,[2] and breach of fiduciary duty.

A trial was held on October 26 and 27, November 9, and December 1, 2009. In an order entered June 2, 2010, the court made extensive findings of fact and concluded that, "a confidential relationship existed between Ruth Nelson and Helen Cornell, and that there are suspicious circumstances surrounding the execution of the January 20, 2005 document such as to lead the Court to conclude that the 2005 Last Will and Testament was the product of undue influence." As a consequence, the court held that the 2005 Will was invalid and admitted the 2004 Will to probate. In addition, the court found that Defendant failed to sustain her burden of proof regarding intentional infliction of emotional distress.[3] The trial court also entered an order awarding fees to counsel for Plaintiffs, directing that those fees be paid from estate funds and taxing discretionary costs against Defendant. It is from these orders Defendant appeals.

---

[2] With respect to the allegations of intentional infliction of emotional distress, Defendant's counterclaim alleged:

> Thomas L. Grimes brought a firearm, a revolver, to the hospital room where [Mrs. Nelson]. . . was a patient and where [Defendant] was visiting [Mrs. Nelson]; that he was hostile, refused to talk and refused to eat with the family. That these acts constituted extreme and outrageous conduct and a misuse of Conservator Thomas L. Grimes' authority, which placed [Defendant] in reasonable apprehension of serious bodily harm and which caused her serious emotional distress.

Defendant further alleged that said conduct caused her to suffer "extreme, recurring pain for which she was hospitalized and for which she has continuing medical treatment and medical expense."

[3] Defendant asserts in her brief that the trial court dismissed the conversion and breach of fiduciary duty claims; she does not provide citations to the record where the court so held and we do not find an order to that effect in the record. The June 2, 2010 Order was certified pursuant to Tenn. R. Civ. P. 54.02 as a final order in the will contest and reserved the "remaining issues." We have remanded the case to complete the administration of the estate and Defendant, as a beneficiary under the 2004 Will, has the rights set forth at Tenn. Code Ann. § 30-2-601, *et. seq*.

## II. Standard of Review

Our review of the trial court's findings of fact is *de novo*, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). Our review of the trial court's determinations regarding questions of law is *de novo* with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

## III. Discussion

### A. Trial Court's Determination that the 2005 Will was a Product of Undue Influence

Defendant asserts that the trial court erred in finding the following suspicious circumstances to exist, leading the court to conclude that the 2005 Will was the product of undue influence: (1) Mrs. Nelson's health was poor when she signed the 2005 Will; (2) Defendant was involved in procuring the 2005 Will and was the primary beneficiary of the will; (3) there was secrecy concerning the will's existence; (4) there were discrepancies between the will and the testator's expressed intentions; and (5) there was a confidential relationship between Mrs. Nelson and Defendant.

#### 1. Suspicious Circumstances

The presence of undue influence is most often established by "proving the existence of suspicious circumstances warranting the conclusion that the will was not the testator's free and independent act." *Kelley v. Johns*, 96 S.W.3d 189, 195 (Tenn. Ct. App. 2002) (citing *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989)). Courts have not prescribed an exact formula for the number or type of suspicious circumstances necessary to invalidate a will due to undue influence. *Id.* The most common forms of suspicious circumstances which will vitiate a will include: (1) the existence of a confidential relationship between the testator and the beneficiary; (2) poor physical and mental condition of the testator; and (3) the beneficiary's involvement in the procurement of the will in question. *See Estate of Hamilton v. Morris*, 67 S.W.3d 786, 792 (Tenn. Ct. App. 2001) (citing *Mitchell*, 779 S.W.2d at 388)). Other recognized suspicious circumstances include: (1) secrecy concerning the will's existence; (2) the testator's advanced age; (3) the lack of independent advice in preparing the will; (4) the testator's illiteracy or blindness; (5) the unjust or unnatural nature of the will's terms; (6) the testator being in an emotionally distraught state; (7) discrepancies

between the will and the testator's expressed intentions; and (8) fraud or duress directed toward the testator. *Kelley*, 96 S.W.3d at 196 (citing *Halle v. Summerfield*, 287 S.W.2d 57, 61–62 (Tenn. 1956); *In re Estate of Maddox*, 60 S.W.3d 84, 89 (Tenn. Ct. App. 2001); *Mitchell*, 779 S.W.2d at 388; 1 *Pritchard on Wills* § 148, at 233.)

### i.      Health of Mrs. Nelson

The court found that Mrs. Nelson was "in a state of both physical and mental deterioration at the time of the signing of the 2005 will." In making this determination, the court relied in part on the record in a proceeding initiated by Defendant in 2003 to have a conservator appointed for Mrs. Nelson. In that proceeding, which resulted in the appointment of Thomas Grimes as conservator for Mrs. Grimes, Defendant asserted that a conservator was necessary because of Mrs. Nelson's advanced age and deteriorating medical and mental condition.[4] The deposition of Beth Boone, Guardian *ad litem* in the conservatorship proceeding, was introduced into evidence in the will contest. Ms. Boone testified that she had observed and interviewed Mrs. Nelson on several occasions and submitted two reports regarding her perceptions of Mrs. Nelson and her recommendations relative to the conservatorship. The first report, filed April 28, 2003, stated that Mrs. Nelson was "extremely alert, bright and very clear on her financial and physical condition." Ms. Boone's second report, filed fifteen days prior to the execution of the 2005 Will, stated that Mrs. Nelson's condition was "much deteriorated since earlier meetings when initial conservatorship proceedings were filed." This was evidence properly considered by the trial court on this issue.

In response, Defendant cites deposition testimony from Mrs. Nelson's physicians regarding her physical and mental well-being; she contends that the trial court erred in failing to consider such evidence and that the failure to consider this evidence undermines the court's finding of a suspicious circumstance. Defendant premises her contention on the fact

---

[4] Various of the pleadings in the proceeding instituted by Defendant, styled *In Re: Ruth B. Nelson*, Davidson County Probate Court Case No. 03P-576, were introduced as exhibits at the trial and are a part of the record of this appeal. In the petition initiating that proceeding, Defendant made the following statements regarding the physical and mental condition of Mrs. Nelson:

> The Respondent, Ruth B. Nelson, suffered multiple hip fractures on December 19, 2001, and she is unable to walk without assistance. The Respondent suffers osteo-arthritis. The Respondent suffers gout. The Respondent has a substantial hearing impairment, a hearing loss of 63% in one ear and 75% in her other ear. The Respondent has suffered confusion since her hip fractures. Respondent was hospitalized at Parthenon Pavilion Mental Hospital in May, 2002 where she was diagnosed with paranoia, fixed delusions, personality disorders and senile dementia.

that the trial court did not specifically cite or refer to the depositions of Mrs. Nelson's treating physicians, Drs. William Serafin, Robert B. Snyder, and David Newsom, in its order. We have reviewed the depositions of the physicians in their entirety, and we do not find that the information contained in these depositions is contrary to Ms. Boone's reports or preponderates against the trial court's finding that Mrs. Nelson was "in a state of both physical and mental deterioration at the time of signing the 2005 will."

### ii. Defendant's role in procuring the 2005 Will

The second suspicious circumstance noted by the trial court was Defendant's involvement in procuring the 2005 Will in which she was named the sole recipient of Mrs. Nelson's property at Cherokee Road.[5]  Evidence cited by the court relative to this finding included the testimony of Carey Hambrick, Defendant's and Mrs. Nelson's driver. Mr. Hambrick testified, contrary to the testimony of Defendant, that Defendant set up Mrs. Nelson's appointment with Tim Ferguson, the lawyer who prepared the 2005 Will.  Mr. Hambrick also testified that Defendant accompanied Mrs. Nelson on both of her visits to Mr. Ferguson's office.[6]  The evidence does not preponderate against the trial court's determination that the entire circumstances surrounding Mrs. Nelson's execution of the 2005 Will and the Defendant's role in procuring the will which bequeathed her a greater share of Mrs. Nelson's estate constituted a suspicious circumstance.

### iii. Secrecy concerning the 2005 Will

With respect to the court's finding of secrecy concerning the will's existence, the record shows that when Mrs. Nelson executed the 2004 Will, her conservator, Thomas Grimes, notified Mrs. Nelson's daughters and sent them a copy of the 2004 Will.  In contrast, after Mrs. Nelson executed the 2005 Will, neither she nor the Defendant notified Mary Grimes, who was alive at the time the 2005 Will was executed, or Thomas Grimes, Mrs. Nelson's conservator, of the execution of the 2005 Will.  The trial court appropriately considered this circumstance as evidence of secrecy surrounding the 2005 Will.

---

[5]  The 2004 Will bequeathed Mrs. Nelson's real property to her two daughters—Defendant and Dr. Grimes—and provided, *inter alia*, "[s]hould either daughter die before receiving her share of my estate, any living children of that daughter shall share equally in the part that the deceased daughter would have received."  The 2004 Will also included four cash bequests to Mrs. Nelson's grand-children and appointed Thomas L. Grimes executor.  In contrast, the 2005 Will bequeathed, *inter alia*, the Cherokee Road property to the Defendant, did not include any cash bequests to Mrs. Nelson's grand-children, and appointed Defendant as personal representative of the estate.

[6]  Mr. Ferguson and Mr. Hambirck testified that neither Mr. Hambrick nor Defendant was present when Mr. Ferguson and Mrs. Nelson were meeting.

### iv. Discrepancies between the 2005 Will and Mrs. Nelson's other expressed wishes

Evidence in support of the trial court's finding of "discrepancies between the will and testator's expressed intentions" includes the testimony of Attorney Michael Castellarian and a codicil executed by Mrs. Nelson in September 2002. Mr. Castellarian testified that he first met Mrs. Nelson in March 1994 and that his history with Mrs. Nelson included drafting wills for her in 1994, 1997, 1998 and 2002; he also drafted and revised powers of attorney for Mrs. Nelson.[7] Each of the wills he drafted left the Cherokee Road property to Mrs. Nelson's daughters, equally. In the course of his testimony, numerous documents were introduced, including a codicil executed by Mrs. Nelson on September 20, 2002 modifying her will executed on June 12, 2002; in the codicil, Mrs. Nelson stated:

> First: It has recently come to my attention that my daughter, Helen Loftin Cornell, acting pursuant to a power of attorney, transferred my home at 253 Cherokee Road, Nashville, Tennessee 37205 to herself by deed dated May 28, 2002 and recorded in the Register of Deeds office for Davidson County Tennessee under document number 20020528-0063913. This transfer was made without my knowledge or approval and I have asked Helen Cornell to execute a deed to transfer whatever interest she may have obtain[]ed in this property back to me. To date, I have had no response to my request. As stated in my will of June 12, 2002, it was my desire that my estate largely be divided equally between my two daughters on my death. My home at 253 Cherokee is a large part of my estate. The wrongful conveyance of this home interferes with the intent of my will. Therefore, I direct that if Helen Loftin Cornell still claims an ownership interest in my home at 253 Cherokee Road at the time of my death, my executor shall hire a qualified appraiser to establish the then current market value of my home at 253 Cherokee Road and that the value of my home at 253 Cherokee Road, and all rents received on that property by Helen Loftin Cornell, shall be deducted from any share of my estate to which Helen Loftin Cornell might otherwise be entitled. In addition, if the value of my home at 253 Cherokee Road is determined to be greater than the share to which Helen Loftin Cornell would otherwise be entitled under my will, I direct my executor to consider that excess value to be a debt to my estate and to pursue repayment from Helen Loftin Cornell.

---

[7] Because of his involvement in the conservatorship proceeding, Mr. Castellarian felt he should not confer with Mrs. Nelson or prepare a new will for her in 2004. George Cate, an attorney, testified that he was asked by Mr. Castellarian to assist Mrs. Nelson in making changes to the 2002 will and that he drafted Mrs. Nelson's 2004 will.

Despite her history with Mr. Castellarian and, more recently, Mr. Cate, Mrs. Nelson did not seek the counsel of either with respect to the 2005 Will. Tim Ferguson, the attorney who drafted the 2005 Will, testified that he first met with Mrs. Nelson on January 13, 2005 when she brought the 2004 will to him; Mrs. Nelson had already penciled in changes on the will and requested he prepare a new will reflecting the changes. She did not ask his advice or counsel regarding the changes and he made no inquiry regarding the nature and extent of her estate or the reason for the changes. He prepared the will as instructed and met with her a second time on January 20, when she executed the will.

The evidence shows that the terms of the 2005 Will differed considerably from each of her prior wills; the 2002 codicil was further evidence of Mrs. Nelson's intentions with respect to the disposition of her property at her death. The letters and testimony cited by Defendant do not preponderate against the court's finding that the discrepancies constituted a suspicious circumstance.

> **v.    Confidential relationship between Mrs. Nelson and Defendant**

The trial court also found that a confidential relationship existed between Defendant and Mrs. Nelson. Defendant contends that the evidence preponderates against this finding.

A confidential relationship is "any relationship that gives one person the ability to exercise dominion and control over another." *Kelley*, 96 S.W.3d at 197 (citing *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 410 (Tenn. 2002); *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002); *Mitchell*, 779 S.W.2d at 389). Confidential relationships originate from two sources: "(1) 'legal confidential relationships' and (2) 'family and other relationships.'" *In re Estate of Brevard*, 213 S.W.3d 298, 302–03 (Tenn. Ct. App. 2006) (quoting *Matlock*, 902 S.W.2d at 385–86)). Family relationships are not confidential *per se* and thus, "the contestants must prove the elements of domination and control in order to establish the existence of a confidential relationship." *Id.* "Proof of a family relationship 'coupled with proof of domination and control' establishes a confidential relationship, 'but does not make out a *prima facie* claim of undue influence unless an additional suspicious circumstance exists.'" *Waller v. Evans*, No M200800312COAR3CV, 2009 WL 723519, at *7 (Tenn. Ct. App. Mar. 17, 2009) (citing *In re Estate of Brevard*, 213 S.W.3d at 302–03). The question of whether a confidential relationship existed between Mrs. Nelson and Defendant is a question of fact. *See Smith v. Smith*, 102 S.W.3d 648, 652 (Tenn. Ct. App. 2002).

There is clear evidence that defendant exercised "dominion and control" over Mrs. Nelson, an element of the finding of a confidential relationship. In addition to the mother-

daughter relationship, Defendant was the only relative living in close proximity to Mrs. Nelson at the time the 2005 Will was executed. Due to her advanced age and ill-health, Mrs. Nelson relied on the Defendant to transport her to doctor appointments and to the attorney's office where the 2005 Will was executed. Further, Mrs. Nelson had to initiate a suit in October 2002 ("the 2002 lawsuit") to recover the Cherokee Road property which Defendant, utilizing the authority granted to her by Mrs. Nelson in a power of attorney, had transferred to herself. The 2002 litigation was ultimately resolved when Defendant re-conveyed title to the Cherokee Road property to Mrs. Nelson; the facts of the 2002 lawsuit revealed that Defendant exercised control over Mrs. Nelson.[8] The evidence does not preponderate against the trial court's finding that a confidential relationship existed between Defendant and Mrs. Nelson.

Upon our review of the record, we affirm the finding that the 2005 Will was the product of undue influence.

### B.      Dismissal of Defendant's Claim for Intentional Infliction of Emotional Distress

To sustain a cause of action for intentional infliction of emotional distress the plaintiff must show that the conduct complained of was intentional or reckless; that the conduct was outrageous; and that the conduct resulted in serious mental injury. *Searle v. Harrah's Entertainment, Inc.*, No. M2009-02045-COA-R3-CV, 2010 WL 3928632, at *9 (Tenn. Ct. App. July 15, 2010) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citations omitted)).

The evidence shows that the alleged incident between Defendant and Mr. Grimes occurred on November 14, 2005 while Defendant was visiting Mrs. Nelson at Vanderbilt Hospital. Defendant testified consistent with the allegations of the amended counterclaim; her testimony was supported by the testimony of Mr. Hambrick. Mr. Grimes testified that he did not have a pistol with him at the time of the alleged encounter with Defendant and that he did not take any action that could be construed as a hostile act or threatening gesture toward the Defendant. With respect to Defendant's alleged injury, the trial court found, "no

---

[8] During the pendency of the 2002 lawsuit, Mrs. Nelson sent a letter to her counsel requesting that the suit be dismissed. In an affidavit subsequently filed in the suit and introduced as an exhibit in the will contest, Mrs. Nelson stated that Defendant and Defendant's daughter coerced her into signing the letter by putting the letter in front of her and threatening not to leave until Mrs. Nelson signed. Rochelle Brown, a private sitter who attended Mrs. Nelson, testified that she witnessed the interaction and believed that Mrs. Nelson signed the letter under duress.

medical testimony was offered to confirm that Helen Cornell's heart episode or medical procedures were the result of any actions by Tom Grimes."[9]

After reviewing the evidence, we conclude that the evidence does not preponderate against the trial court's finding that Defendant's injuries were not proven to be caused by any intentional, reckless, or outrageous conduct by Mr. Grimes. We affirm the court's dismissal of Defendant's counter-claim for intentional infliction of emotional distress.

## C.    Procedural and Evidentiary Rulings

Defendant contends the trial court made several erroneous evidentiary and procedural decisions that affected the outcome of the trial. Defendant asserts that the trial court erred in admitting evidence of the 2002 lawsuit and evidence of a Board of Professional Responsibility ("BPR") proceeding against her; she contends that the admission of the evidence "amounted to a violation of Rules 402, 403, 404 and 608." Defendant also asserts that the trial court erred in failing to enforce Davidson County Local Rule 29.01 and the "missing witness rule."

### 1.    Evidence of Prior Lawsuit and BPR action against Defendant

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). In addition, the trial court has discretion in determining if evidence meets the test for relevancy and in assessing the probative value and danger of unfair prejudice regarding the evidence. *See State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App.1995); *State v. Burlison*, 868 S.W.2d 713, 720-21 (Tenn. Crim. App.1993). "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Because, by their very nature, discretionary decisions involve a choice among acceptable alternatives, reviewing courts will not second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). When reviewing a trial court under an abuse of discretion standard, "we are not permitted to substitute our judgment for that of the trial court[,]" and "we must uphold the trial court's ruling as long as reasonable

---

[9] Although Defendant was at a hospital at the time of the alleged incident, she did not seek medical attention for three weeks.

minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

Tenn. R. Evid. 401 provides that "relevant evidence" is evidence which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states that relevant evidence is admissible unless specifically excluded; Rule 403 provides that evidence, even if relevant, may be excluded "where its probative value is substantially outweighed by the danger of unfair prejudice, [or] confusion of the issues, . . ." Tenn. R. Evid. 608 governs the admissibility of evidence of prior conduct for the purpose of attacking or supporting a witness's credibility.

As noted above, evidence of the 2002 lawsuit was relevant to the issue of the confidential relationship between Defendant and Mrs. Nelson. The evidence was not introduced to prove the character of the Defendant under Tenn. R. Evid. 404 or 608 and was not excluded under the provisions of Rule 402 or 403. The trial court did not abuse its discretion in admitting the evidence of the 2002 lawsuit.

Defendant objects to the admission of collective Exhibit 67, a certified copy of the Petition for Discipline and Order of Enforcement filed in a BPR proceeding, and Exhibit 23, a copy of Defendant's Conditional Guilty Plea entered in that proceeding.[10] The Conditional Guilty Plea was admitted during examination of the Defendant, who had been called as a witness by Plaintiffs. The colloquy between Plaintiffs' attorney and Defendant, leading to the introduction of the document, is as follows:

Q: Ms. Cornell, do you consider yourself an honest person?
A: Yes.
Q: Did you try and influence Ms. Nelson to give you the house on Cherokee Drive?
A: No.

---

[10] Although the particular BPR proceeding was not directly related to the will contest, the Petition for Discipline included the following as an "aggravating factor":

The Respondent has three prior public disciplinary offenses. Respondent received a six (6) month suspension in 2002 for using false evidence and perpetrating a fraud. She received a Public Censure in 2004 for transferring her mother's home to herself via a power of attorney without giving notice to her mother. Finally, Respondent received a Public Censure in 2005 for pursuit of a claim without a factual basis or fabricated evidence and for failing to properly supervise a nonlawyer assistant who called the opposing party directly.

Q: Did you try and exert undue influence on your mother to give you a greater benefit in the will of 2005 than she'd ever given to you before?
A: No.
. . .
Q: In that conditional guilty plea you entered, didn't you admit to being untrustworthy and that you had acted on matters that showed a lack of trustworthiness?
A: I don't remember if --
. . .
Q. Isn't that a conditional guilty plea?
A.  It is.
. . .
Q. . . . And you waived the hearing and appeals and entered this guilty plea? Is that right?
A. I signed the agreement.
Q. "Respondent admits her guilt of violating the following Rules of Professional Conduct: 4.1(a), 8.4(a), (b), and (c)." . . . "Respondent" - - . . . admits her guilt of violating the following rules."
A. Uh-huh.
Q. That's your signature?
A. Uh-huh.

Pursuant to Tenn. R. Evid. 608(b), specific instances of a witness's conduct, probative of truthfulness or untruthfulness, may be used to impeach or rehabilitate a witness, but extrinsic proof of that conduct is inadmissible. *See* Neil P. Cohen, Sarah Y. Sheppeard, and Donald F. Paine, *Tennessee Law of Evidence* § 6.08[5] (5th ed. 2005). Extrinsic evidence is "evidence that is calculated to impeach a witness's credibility, adduced by means other than cross-examination of the witness. The means may include evidence in documents and recordings and the testimony of other witnesses." Black's Law Dictionary (9th ed. 2009).

At the time Exhibit 23 was offered into evidence, Defendant was being interrogated relative to her honesty, truthfulness, and whether she had exerted undue influence on her mother. Based on her responses, she was asked about the plea of guilty in the BPR proceeding; she acknowledged her plea and her signature on the document. In light of Defendant's acknowledgment of signing the plea in which she admitted violating Rules of Professional Conduct 4.1(a) and 8.4(a)–(c),[11] the admission of Exhibit 23, which constituted

---

[11] Rule of Professional Conduct ("RPC") 4.1(a) proscribes a lawyer making a materially false statement of material fact or law to a third person in the course of representing a client.  RPC 8.4(a)-(c)

(continued...)

extrinsic evidence as contemplated by Tenn. R. Evid. 608(b), was error. Based on the entire record, however, we have determined that the error was harmless. *See* Tenn. R. App. P. 36(b).[12]

The other documents from the BPR, which comprised Exhibit 67, were introduced by Plaintiffs through the cross-examination of Mr. Hambrick. The specific document referenced during the cross-examination was a public censure of Defendant entered August 5, 2005, which was introduced when Mr. Hambrick testified that he could not recall the number of times he testified on behalf of the Defendant. Plaintiffs' counsel introduced the public censure which stated in pertinent part:

> Mr. Hambrick has testified as a witness in several of the Respondent's trials; Morris v. State, Cornell v. Dearing Company and Cornell v. State. In Cornell v. State, the trial court "cautioned [Mr. Hambrick] about his oath and the accuracy of his testimony and then questioned him closely about his inconsistent statements." Cornell v. State, 118 S.W.3d at 377 (Tenn. Court of Appeals 2003).

The public censure contained in Exhibit 67 was offered to impeach the testimony of Mr. Hambrick and was relevant to show Mr. Hambrick's history of testifying on behalf of Defendant. The trial court did not abuse its discretion in allowing the document to be introduced. There is no indication that the court relied upon any other document in collective Exhibit 67; consequently, any error in admitting other documents in the exhibit was harmless. *See* Tenn. R. App. P. 36(b).

### 2. Local Rule 29.01

Defendant contends that the trial court failed to apply Davidson County Local Rule 29.01 which provides as follows:

---

[11](...continued)
defines "professional misconduct" to include, *inter alia,* committing a criminal act "that reflects adversely on the lawyer's honesty, trustworthiness, . . .[or] engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . ."

[12] *See* Tenn. R. App. P. 36(b): "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process . . . ."

At least seventy-two (72) hours (excluding weekends and holidays) before the trial of a civil case, opposing counsel shall either meet face-to-face or shall hold a telephone conference for the following purposes:

> 1. to exchange names of witnesses, including addresses and home and business telephone numbers (if not included in interrogatory answers) including anticipated impeachment or rebuttal witnesses; and
> 2. to make available for viewing and to discuss proposed exhibits.

In the event that the parties hold a telephone conference rather than a face-to-face meeting, the exhibits shall be made available for viewing before the conference.

Our review of the record shows that Plaintiffs filed a Witness and Exhibit List on October 20, 2009, six days prior to the commencement of trial. Defendant concedes in her brief that the parties held a telephone conference seventy-two hours prior to trial. Evidence in the record indicates that the parties complied with Davidson County Local Rule 29.01.[13]

### 3. Missing Witness Rule

Defendant contends that the trial court erred in failing to apply the missing witness rule because "two (2) [of the] Plaintiffs did not testify, the remaining one testified only briefly for a few minutes, and two (2) important, listed witnesses did not testify . . . ." The particular witnesses Defendant references are: two of the Plaintiffs, Jeff and Michael Grimes; Karen Grimes, the wife of Thomas Grimes; and Susan Henson, a part-time companion of Mrs. Nelson. Defendant argues that because these witnesses have "knowledge of material facts and there is nothing in the record to indicate that these witnesses were unavailable or unable to testify" the trial court should have made an adverse inference as allowed by the missing witness rule. Plaintiffs contend that the testimony of these witnesses would have been corroborative, cumulative, and unnecessary.

The missing witness rules provides that:

a party is entitled to argue, and have the jury instructed, that if the other party has it peculiarly within his power to produce a witness whose testimony would naturally be favorable to him, the failure to call that witness creates an adverse inference that the testimony would not favor his contentions.

---

[13] Even if the parties did not strictly comply with Davidson County Local Rule 29.01, and we have no reason to believe they did not, Defendant has not satisfied the court that such error more probably than not affected the judgment. *See* Tenn. R. App. P. 36(b).

*Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006). However, "[n]o such inference arises where the only object of calling such witness would be to produce corroborative, cumulative, or possibly unnecessary evidence; or when an adverse inference would be improper for any other reason . . . ." *Dickey v. McCord*, 63 S.W.3d 714, 721 (Tenn. Ct. App. 2001) (citing *Stevens v. Moore*, 139 S.W.2d 710, 717 (1940)).

Plaintiffs' decision not to call the witnesses was a strategic one, and Defendant has failed to demonstrate that the testimony of the witnesses would not have been cumulative, corroborative, or unnecessary. As a consequence, the missing witness rule does not apply in this case, and we decline to draw an adverse inference from the Plaintiffs' decision not to call the witnesses.[14]

### E.       Attorney's Fees

Defendant contends that the trial court erred in awarding Plaintiffs their attorneys fees from the estate.

In deciding whether a party's attorney's fees should be paid by the estate, the trial court must determine whether the "entire estate benefitted from the efforts of the party's lawyer." *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005); *see also Pierce v. Tharp*, 455 S.W.2d 145, 148 (Tenn. 1970). A trial court's decision regarding whether the attorney's services benefitted the estate is discretionary and will not be reversed on appeal absent a finding that the trial court abused its discretion. *Id.* at 885 (citing *Chaille v. Warren*, 635 S.W.2d 700, 703 (Tenn. Ct. App. 1982); *Tigrett v. Tigrett*, 453 S.W.2d 100,114 (Tenn. Ct. App. 1967)).

The trial court determined that "[i]t is a clear benefit to the estate to see that the valid last valid [sic] will and testament of the decedent is offered for probate and that a later will obtained by undue influence is not admitted for probate." The trial court further determined that the fees of Plaintiffs attorneys were reasonable. The trial court did not abuse its discretion in finding that the entire estate benefitted from the work of Plaintiffs attorneys, therefore, we affirm the award of attorney's fees as ordered by the trial court.

---

[14] We note also that Defendant filed a motion in limine in which she asked the court to limit the testimony of the Plaintiffs and several other witnesses because "[t]hese numerous, unnecessary witnesses of Plaintiffs will likely result in delay and the necessity of a continuance of the trial at a later date and increased expense to the parties." Although the record does not show the disposition of the motion, the transcript shows that the motion was presented to the court and the court declined to rule at that time. It is disingenuous for Defendant to decry the court's failure to invoke the missing witness rule in light of Defendant's motion.

## IV.    Conclusion

For the foregoing reasons, the judgment of the Circuit Court for Davidson County is AFFIRMED.  The case is remanded for administration of the estate.

_____
RICHARD H. DINKINS, JUDGE